776 So.2d 1200 (2000)
Ronald GEORGE
v.
Tillman GUILLORY and Louisiana Workers' Compensation Corporation.
No. 00-00591-WCA.
Court of Appeal of Louisiana, Third Circuit.
November 2, 2000.
*1203 Thomas D. Travis, Egan, Johnson & Stiltner, LA, Counsel for Defendants-Appellants.
Dorwan G. Vizzier, Broussard, Bolton, Halcomb & Vizzier, Alexandria, LA, Counsel for Plaintiff-Appellee.
(Court composed of JOHN D. SAUNDERS, JIMMIE C. PETERS, and GLENN B. GREMILLION, Judges).
SAUNDERS, Judge.

FACTS
Plaintiff, Ronald George, was employed by Mr. Harold Dousay, a subcontractor of Tillman Guillory. Mr. George was employed to cut pulpwood and "longwood." At the time of his accident, Mr. George earned $5.00 per cord of pulpwood cut and $10.00 per thousand board feet of "longwood" cut. On February 1, 1993, a tree fell on Mr. George, injuring his left shoulder and side. Mr. George was taken to the Rapides Regional Medical Center emergency room for his injuries. Mr. George spent three days in the hospital for treatment. Because of his injury, Mr. George was unable to return to work, and he sought treatment from Dr. Douglas Waldman, an orthopedic surgeon.
During Mr. George's employment with Mr. Dousay, Tillman Guillory paid workers' compensation benefits for Mr. George as his statutory employer. Tillman Guillory was insured through Louisiana Workers' Compensation Corporation (LWCC). LWCC paid benefits to Mr. George for the work-related injuries he sustained during the accident on February 1, 1993.
As a woodcutter, Ronald George was paid based upon production. Under Louisiana Workers' Compensation Law, this type of wage was considered "other wages" for the purpose of calculating Mr. George's average weekly wage. See La. R.S. 23:1021(10)(d). Since Mr. George had worked less than twenty-six weeks immediately proceeding his accident, under the "other wages" provision, his average weekly wage was calculated by dividing his gross wages for the period, divided by the number of days he actually worked, multiplied by four. See Id. If there were no interruptions, Mr. George's normal workweek was five days a week, Monday through Friday. According to Mr. George's employment records, he worked for fourteen weeks.
LWCC used seventy days, five days a week for the entire fourteen weeks, as the number of days worked during the period, for the purposes of its average weekly wage calculation. Mr. George had not worked the full seventy days. The seventy days used by LWCC included three days after Mr. George's February 1, 1993 accident. Mr. George never returned to work, however, after the accident.
*1204 Using this calculation method, LWCC first paid Mr. George at the minimum workers' compensation indemnity benefit rate of $82.00 per week from February 9, 1993 until May 13, 1993. On May 13, 1993, LWCC made an adjusting payment of $662.16 because it discovered that Mr. George was being underpaid. Thereafter, Mr. George received indemnity benefits in the amount of $127.92 per week through the time he filed suit.
LWCC calculated Mr. George's benefit payment of $127.92 based on his gross wages of $3,918.54 less expenses. Mr. George's employer, Mr. Dousay, estimated that Mr. George's chainsaw related expenses were $40.00 per week. LWCC multiplied the $40.00 times the number of weeks Mr. George worked for Mr. Dousay, arriving at a total of $560.00 in expenses for Mr. George's fourteen weeks worked. LWCC then subtracted the $560.00 in expenses from its gross wage calculation of $3,918.54 and divided this figure by the total number of days Mr. George allegedly worked to arrive at Mr. George's average weekly wage. From its average weekly wage calculation, LWCC determined Mr. George's benefit rate to be $127.92 per week.
LWCC did not increase Mr. George's benefits after notification that Mr. George had not worked seventy days. LWCC did not make any adjustments to Mr. George's weekly benefits and continued to pay benefits based on seventy days employment at the time Mr. George filed suit.
In his suit, Mr. George brought claims regarding the inaccurate compensation rate discussed above as well as LWCC's failure to authorize a needed shoulder surgery. In his deposition of May 18, 1999, Dr. Waldman, Mr. George's treating orthopedic surgeon, testified that Mr. George needed an arthroscopic decompression surgery of the left shoulder to repair his injuries. Dr. Waldman stated that he believed if Mr. George underwent the suggested surgery, there would be a seventy-five percent chance of a good result. Dr. Waldman based this belief on the results he had achieved when he injected Mr. George's shoulder with cortisone. After each shot, Mr. George's pain had been completely relieved. Dr. Waldman testified that he had requested approval of the needed surgery seven times from LWCC, and it had refused to authorize the surgery each time.
During the time period after his injury, several doctors examined Mr. George and gave opinions as to the need for surgery suggested by Dr. Waldman. Dr. Riad Haj Murah, a neurologist with the Alexandria Neuro Center, first examined Mr. George in August 1993. Dr. Murah released Mr. George to light duty work on December 17, 1996. Then, on April 9, 1997, Dr. Murah found Mr. George to be at maximum medical improvement. On February 10, 1998, Dr. Murah indicated in his progress notes that he did not feel neck surgery was necessary, and he would leave the decision about shoulder surgery to Dr. Waldman. Likewise, in a January 21, 1999, progress note, Dr. Murah documented that he deferred to Dr. Waldman concerning the requested shoulder surgery.
Dr. Murah referred Mr. George to Dr. Babson Fresh, a neurosurgeon. Dr. Fresh examined Mr. George, and he wrote his findings in a report dated January 8, 1998. In his examination of Mr. George's neck, Dr. Fresh found tenderness in the midline at C3-C5. Dr. Fresh noted that Mr. George's neck motion was limited in all planes. Dr. Fresh indicated that his impression was that Mr. George suffered from chronic neck pain. Dr. Babson's plan indicated that Mr. George was a non-surgical candidate and that he should be discharged from the clinic.
At the request of LWCC, Dr. Louis Blanda examined Mr. George on August 24, 1993. In his examination, Dr. Blanda found a previous non-displaced fracture of the left scapula, which was healing at that time, and a callous formation in the same area. Dr. Blanda's report indicated that *1205 the scapular fracture and right thumb fracture had improved as of August 24, 1993, and that Mr. George was "as good as he is going to get" and should probably recover without any significant difficulty. Dr. Blanda also noted that Mr. George's neurological evaluation regarding neck complaints and radicular components in the left hand were still pending, and Dr. Blanda deferred to Dr. Waldman for those conditions. Dr. Blanda's report indicated he did not agree with Dr. Waldman's assessment that shoulder surgery was necessary.
Dr. John Sandifer performed an independent medical evaluation on Mr. George and reported the results of that examination on May 24, 1994. Dr. Sandifer's report indicated that Mr. George's status was post-fracture of the left scapula. Dr. Sandifer noted that Mr. George had probable cervical strain with cervical nerve irritation. In addition, Dr. Sandifer stated that Mr. George, as of the date of the examination, would have difficulty returning to work as a log cutter, but that he should be trained for a job that was lighter in nature, such as driving a truck. Furthermore, Dr. Sandifer found that Mr. George should not lift anything over his head weighing over 10 to 15 pounds, bend from the waist repetitively, or lift 30 to 40 pounds below shoulder level. Dr. Sandifer did not assert an opinion as to whether the surgery recommended by Dr. Waldman should be performed.
Dr. Phillip Osborne performed a functional capacity examination on Mr. George on June 27, 1995. Dr. Osborne stated that Mr. George could perform heavy work, occasionally lifting 50-100 pounds, frequently lifting 25-50 pounds, and constantly lifting 10-20 pounds. Dr. Osborne stated that Mr. George would have problems lifting over shoulder level. Dr. Osborne found Mr. George to have a 4% whole person impairment with no evidence of brachial plexus abnormality, normal reflexes and strength. Finally, Dr. Osborne expressed no opinion as to whether Mr. George should undergo the recommended back surgery.
On January 2, 1996, at the request of LWCC, Dr. Vanda Davidson evaluated Mr. George. Dr. Davidson found Mr. George's range of motion in his left shoulder limited, which he attributed to his accident. In addition, Dr. Davidson reviewed the medical records of Dr. Murah, Dr. Waldman, Dr. Blanda, and Dr. Osborne; Mr. George's emergency room records; and his hospital admissions records in February 1993. Dr. Davidson noted that there were no x-rays available for his review of Mr. George's current condition. Based on the reports from the patient's prior EMG nerve conduction studies, CT scans of the cervical spine, thoracic CTs, CTs of the head, and the physical therapy reports from Rapides Regionall, he diagnosed Mr. George as having: "1) Late effect contusion brachial plexus with 2. 2) Late effect fracture of the scapula body." Dr. Davidson concluded that he would give the patient a higher impairment rating than the one given by Dr. Osborne, stating that he would increase Mr. George's impairment of the person as a whole by 3-5%.
In reviewing Dr. Waldman's records, Dr. Davidson agreed that Mr. George had probably reached his maximum medical improvement in May 1995. Dr. Davidson disagreed, however, with Dr. Waldman's suggestion that the patient should have a decompression of the shoulder. Dr. Davidson stated that he did not think the surgery would give Mr. George significant relief from his condition. Dr. Davidson opined that the source of Mr. George's pain may have been a change in the alignment of the glenoid with respect to the scapula or an entrapment of the supra scapular nerve. In line with his opinion, Dr. Davidson suggested that a CT scan of the scapula be taken, and an EMG nerve conduction study be conducted.
On November 6, 1996, Julie Villar Justice, an LWCC adjuster, wrote to Dr. Waldman, denying authorization for the proposed surgery on Mr. George's left *1206 scapula. LWCC denied authorization based on the different opinions of Dr. Davidson and Dr. Blanda. Because of LWCC's denial of surgery and its earlier miscalculation of his benefit rates, Mr. George filed suit.

PROCEDURAL FACTS
At trial, the workers' compensation judge ruled in favor of the Plaintiff, Mr. George. The judge found that LWCC had miscalculated Mr. George's workers' compensation indemnity benefit rate, and ordered LWCC to pay $8,372.26 in back due indemnity benefits plus legal interest to Mr. George. Furthermore, the judge found that no penalties were warranted against LWCC for the underpayment of benefits. In addition, the judge ordered LWCC to authorize arthoscopic decompression surgery for Mr. George. Finally, the judge imposed a penalty of $2,000.00 and attorneys fees of $3,500.00 on LWCC for its arbitrary refusal to authorize Mr. George's requested shoulder surgery.

LAW AND ANALYSIS

STANDARD OF REVIEW
Factual findings in a workers' compensation case are subject to the manifest error or clearly wrong standard of appellate review. Smith v. Louisiana Dep't of Corrections, 93-1305 (La.2/28/94); 633 So.2d 129. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Stobart v. State, Dep't of Transp. & Dev., 617 So.2d 880 (La.1993). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Id. Accordingly, if the trial court's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106 (La.1990).

DEFENDANTS' ASSIGNMENTS OF ERROR
1. The workers' compensation judge erred in awarding penalties and attorneys fees against LWCC for its refusal to authorize Mr. George's shoulder surgery.
2. The workers' compensation judge's award of statutory penalties should be reversed as a matter or law.

PLAINTIFF'S ASSIGNMENTS OF ERROR
1. The workers' compensation judge erred in failing to award penalties and attorneys fees for LWCC's failure to timely pay Mr. George's full indemnity benefits.
2. The workers' compensation judge erred in failing to fix the expert fees of Dr. Waldman and in failing to award Mr. George the costs of the proceedings.
3. The workers' compensation judge erred in failing to award Mr. George legal interest on the penalties and attorneys fees awarded in his judgment.
4. Mr. George asserts that he is entitled to additional attorneys fees for the defense of Defendants' appeal and the prosecution of his answer.

SHOULDER SURGERY
In their first assignment of error, the Defendants allege that the workers' compensation judge erred in awarding penalties and attorneys fees for their refusal to approve Mr. George's shoulder surgery.
At trial, the workers' compensation judge awarded Mr. George penalties in the amount of $2,000.00 and attorneys fees in the amount of $3,500.00 for LWCC's arbitrary refusal to authorize surgery. In addition, the judge ordered LWCC to authorize *1207 the arthoscopic decompression surgery within ten days of his order.
In his reasons for judgment, the workers' compensation judge gave his reasons for awarding penalties and attorneys fees. In support of his award, the judge summarized the evidence presented at trial indicating that Mr. George's request for shoulder surgery was necessary and reasonable. The judge noted that repeated EMG and nerve conduction studies showed median nerve deficits in Mr. George's left scapula area. In addition, the judge noted that Dr. Waldman, Mr. George's treating orthopedic surgeon, had consistently requested authorization for surgery. Furthermore, the judge found that all of the independent doctors who examined and treated Mr. George found nerve deficits in his left scapula area. Finally, the judge indicated that all of the independent doctors stated that Mr. George could not lift anything over shoulder level, and all of the functional capacity examinations indicated weakness in Mr. George's left shoulder area. From this evidence, the judge concluded that no real dispute existed as to Mr. George's left shoulder injury. The only real dispute, the judge stated, was as to the treatment of that injury. The judge noted that Louisiana Workers' Compensation Law gives great deference to the opinion of the treating physician when no real contradictory medical proof exists, citing Martin v. Red Simpson, Inc., 94-817 (La. App. 3 Cir.2/1/95); 649 So.2d 1155. Therefore, the judge found that LWCC was arbitrary and capricious in its refusal to authorize Mr. George's shoulder surgery after his treating orthopedic surgeon, Dr. Waldman, had requested the surgery numerous times.
On appeal, the Defendants assert that the workers' compensation judge erred in assessing penalties and attorneys fees. The determination of whether an employer or insurer should be cast with penalties and attorneys fees is essentially a question of fact, and the workers' compensation judge's finding shall not be disturbed on appeal absent manifest error. Wiltz v. Baudin's Sausage Kitchen, 99-930 (La.App. 3 Cir. 6/19/00); 763 So.2d 111. Under La.R.S. 23:1201, sanctions, in the form of penalties and attorneys fees, are available when workers' compensation benefits are not provided as required by law. See Clifton v. Rapides Reg'l Med. Ctr., 96-509 (La.App. 3 Cir. 10/9/96); 689 So.2d 471.
The test for determining whether an employer or insurer has fulfilled its duty to furnish medical benefits is whether the employer or insurer had sufficient factual and medical information to reasonably counter the factual and medical information presented by the workers' compensation claimant. Gibson v. Dynamic Indus., Inc., 96-1605 (La.App. 3 Cir. 4/2/97); 692 So.2d 1320; Faul v. Bonin, 95-1236 (La. App. 3 Cir. 8/7/96); 678 So.2d 627, writ denied, 96-2221 (La.11/15/96); 682 So.2d 769. On appeal, Defendants cite only a scant amount of evidence in an effort to show that they reasonably controverted Mr. George's request for surgery. Defendants point to Dr. Blanda's second opinion, conducted at the request of LWCC, and to Dr. Davidson's independent medical examination, conducted under the court's authority. Dr. Blanda did not agree with Dr. Waldman's assessment that shoulder surgery was necessary, while Dr. Davidson did not agree with the recommendation because he felt further studies of the shoulder needed to be conducted.
We agree with the trial court that the Defendants did not reasonably controvert Mr. George's claim. The testimony of a claimant's treating physician should be afforded more weight than that of an examining physician, since the treating physician is more likely to know the patient's symptoms and complaints due to repeated examinations and sustained observations. Wiltz, 99-930; 763 So.2d 111. Here, the treating orthopedic surgeon, Dr. Waldman, testified that Mr. George's left shoulder injury could be repaired through an arthroscopic *1208 decompression surgery. Dr. Waldman further testified that if Mr. George's left shoulder problem was left to deteriorate, Mr. George would eventually experience a rotator cuff tear. Finally, Dr. Waldman testified that he had requested authorization from LWCC on seven occasions, and LWCC refused to authorize the surgery each time.
Since the Defendants failed to reasonably controvert Mr. George's request for shoulder surgery, we find this assignment of error without merit. Accordingly, the workers' compensation judge did not err in awarding penalties and attorneys fees in favor of Mr. George.

STATUTORY INTERPRETATION
On appeal, the Defendants argue that the workers' compensation judge's award of statutory penalties should be reversed as a matter of law. Defendants argue that La.R.S. 23:1142 is the exclusive provision under which a trial court may award penalties when an employer or an insurer denies or delays medical treatment.
The applicable provision of La.R.S. 23:1142(D) provides:
D. Fees and expenses. If the payor has not consented to the request to incur more than a total of seven hundred fifty dollars for any and all nonemergency diagnostic testing or treatment when such consent is required by this Section, and it is determined by a court having jurisdiction in an action brought either by the employee or the health care provider that the withholding of such consent was arbitrary and capricious, or without probable cause, the employer or the insurer shall be liable to the employee or health care provider bringing the action for reasonable attorney fees related to this dispute and to the employee for any medical expenses so incurred by him for an aggravation of the employee's condition resulting from the withholding of such health care provider services.
This provision provides only for attorneys fees and not penalties. Id. The Defendants' argument that this statute is the exclusive statute under which a trial court may award penalties when an employer or an insurer denies or delays medical treatment, however, is without merit. La.R.S. 23:1142(D) creates a cause of action in the health care provider or the employee enabling him to collect a medical bill for denied necessary treatment after the fact. This action is in the nature of an action on an open account wherein the person seeking to collect may recover his attorney fees and be made whole. Id. This provision expands the employee's remedies under La.R.S. 23:1201 in that it also allows the employee to recover any medical expenses incurred "for an aggravation of [his] condition resulting from the withholding of [the medical services or diagnostic tests.]" Id. Under this statute, a judge may award attorneys fees against both employers and insurers who arbitrarily and capriciously refuse to consent to the recommended nonemergency diagnostic testing or treatment. Id.
As evidenced by our discussion above, we find that the Defendants' argument that La.R.S. 23:1142 should be exclusively considered in awarding penalties in this case without merit. Penalties are made available to employees under La.R.S. 23:1201. Penalties under La.R.S. 23:1201 are properly awarded when an employer or an insurer fails to pay medical benefits in a timely fashion. See La.R.S. 23:1201(E)(F). "The penal provisions of this state's workers' compensation act are applied not only against employers who untimely pay weekly benefits, but also against employers who fail to timely deliver competent medical attention. Savoy v. McDermott, Inc., 520 So.2d 888 (La.App. 3 Cir.1987); Dupre v. Sterling Plate Glass & Paint Co., 344 So.2d 1060 (La.App. 1 Cir.), writ denied, 347 So.2d 246 (La.1977)." Foster v. Liberty Rice Mill, 96-438, p.13 (La.App. 3 Cir. 12/11/96); 690 So.2d 792, 800. This court has found an award of penalties proper for an employer's failure *1209 to timely authorize a request for surgery. See Skipper v. Acadian Oaks Hosp., 00-67 (La.App. 3 Cir. 5/3/00); 762 So.2d 122; Foster, 96-438; 690 So.2d 792. Here, LWCC failed to timely authorize a surgery needed by Mr. George, thereby failing to provide medical benefits due to him. At trial, LWCC failed to reasonably controvert Mr. George's request for surgical authorization. Accordingly, we find that the trial court properly awarded penalities against LWCC under La.R.S. 23:1201. Therefore, we find that the trial court's award of penalties was proper.

BACK DUE BENEFITS
In his first assignment of error, Mr. George asserts that the judge erred in finding that he was not entitled to penalties and attorneys fees related to back due workers' compensation indemnity benefits. Mr. George asserts that after being given notice of the initial error in calculation, the Defendant, LWCC, did not make any efforts to correct the error. The determination of whether an employer should be cast with penalties and attorneys fees is essentially a question of fact, and the trial court's finding must not be disturbed on appeal absent manifest error. See Wiltz, 99-930; 763 So.2d 111.
To avoid penalties and attorneys fees for the nonpayment of benefits, the employer or insurer is under a continuing duty to investigate, to assemble, and to assess factual information before denying benefits. See Parfait v. Gulf Island Fabrication, Inc., 97-2104 (La.App. 1 Cir. 1/6/99); 733 So.2d 11. A failure by an insurer to correct an error in calculation, after notification, is a basis for awarding penalties and attorneys fees. See Harris v. Langston Co., 94-1266 (La.App. 3 Cir. 4/5/95); 653 So.2d 789, writ denied, 95-1178 (La.6/23/95), 656 So.2d 1020.
At trial, Ms. Justice admitted receiving several letters from Mr. George's counsel asserting that Mr. George was being paid at the wrong rate and had not worked five days each week for each of the fourteen weeks employed. Ms. Justice admitted she did not contact Mr. Dousay, Mr. George's employer, to determine the correctness of Mr. George's assertions. Ms. Justice also admitted that her files contained information that indicated that Mr. Robbie Lee Setliff, another woodcutter, had worked with Mr. George for at least part of the time in question. Ms. Justice admitted that Mr. Setliff would have been a source of information available to confirm or dispute Mr. George's contentions regarding the days he had worked. Ms. Justice further admitted that there was nothing in her file to indicate that she or anyone else at LWCC had attempted to make contact with Mr. Setliff.
Furthermore, the Defendants possessed information clearly indicating that Mr. George did not work seventy days. Mr. George was injured on February 1, 1993. LWCC's calculation of seventy days included the days of February 2-4, 1993, despite the fact that Mr. George did not return to work after he was injured. Ms. Justice testified at trial that if Mr. George was injured on February 1, 1993, and did not work thereafter, LWCC should have used sixty-seven days in calculating Mr. George's benefits. LWCC should have known that seventy days was incorrect and Mr. George could not have worked more than sixty-seven days because LWCC's own payment records reflect that it paid Mr. George weekly indemnity benefits for February 2-4, 1993.
The determination of whether an insurer or employer has acted arbitrarily or has reasonably controverted claims for the purpose of imposing penalties or attorneys fees depends primarily upon facts known to the insurer or the employer at the time of its conduct. Harris, 94-1266; 653 So.2d 789. To reasonably controvert a claim so as not to be liable for statutory penalties, the insurer must have factual or medical information of such a nature that it reasonably counters that provided by the workers' compensation *1210 claimant. Balsamo v. Jones, 28-885 (La. App. 2 Cir. 12/11/96); 685 So.2d 1140.
In this instance, at least with respect to February 2-4, 1993, the Defendants have no evidence to counter Mr. George's claim that they should have known he was not working. In addition, the information that Mr. George had worked less than seventy days had been in the hands of LWCC since 1993. LWCC did not present evidence sufficient to reasonably controvert Mr. George's claim. A workers' compensation claimant may be awarded a penalty for his employer's failure to timely pay wage benefits, and an additional penalty for his employer's failure to timely pay medical benefits. See Batiste v. Capitol Home Health, 96-799 (La.App. 3 Cir. 5/7/97); 699 So.2d 395. Accordingly, we find that the workers' compensation judge erred in failing to award penalties and attorneys fees for LWCC's failure to pay Mr. George's benefits at the proper rate. Therefore, we find that Mr. George is entitled to an award of an additional $2,000.00 in penalties and an additional $2,000.00 in attorney fees.

FAILURE TO AWARD COSTS AND FIX FEES OF EXPERT
In his second assignment of error, Mr. George asserts that the workers' compensation judge erred in failing to award him the costs of the proceedings and in failing to fix the expert fees of Dr. Waldman. Mr. George bases this assignment of error on the fact that the judgment of the lower court did not award the costs of taking Dr. Waldman's deposition and did not fix his expert fees.
At trial, Mr. George prevailed in his original demands and in the defense of the Defendants' reconventional demand. Although a trial court enjoys great discretion in assessing costs, the general rule is that the party cast in judgment should pay all costs of trial. Watson v. State Farm Fire and Cas. Ins. Co., 459 So.2d 1235 (La.App. 1 Cir.1984), rev'd on other grounds, 469 So.2d 967 (La.1985). Where a judgment is silent as to costs, they shall be paid by the party cast in judgment. Lewis v. Macke Bldg. Servs., Inc., 524 So.2d 16 (La.App. 5 Cir.), writ denied, 532 So.2d 131 (La.1988); See also Bonfanti Marine, Inc. v. State Through Div. of Admin., 444 So.2d 218 (La.App. 1 Cir.1983). In the instant case, the court's judgment did not award costs of the proceeding to either party; it was silent as to the assignment of costs. The cost of the proceedings was properly assessed against the parties cast in judgment, the Defendants, Tillman Guillory and LWCC. In addition, La.R.S. 13:4533 provides that witness' fees and costs of taking depositions shall be taxed as costs. Therefore, the cost was assessed against the Defendants including Dr. Waldman's witness fee and the costs of his deposition.
A trial court's assessment of costs may be reversed by an appellate court only upon a showing of abuse of discretion. Hollingsworth v. Bowers, 96-257 (La.App. 3 Cir. 12/30/96); 690 So.2d 825. We find no error in the lower court's assessment of costs against the Defendants. Accordingly, the Defendants, Tillman Guillory and LWCC, must pay costs including Dr. Waldman's witness fee and the costs of his deposition.
Mr. George also urges that the trial court erred in failing to fix expert witness fees for Dr. Waldman. We agree. In Mr. George's initial claim, he requested all costs of the proceedings be assessed against the Defendants. Although the default rule provides that these costs must be assessed against the party cast, the workers' compensation judge failed to provide guidance as to the amount of the fee due to Dr. Waldman. "An expert witness is entitled to reasonable compensation for his court appearance and for his preparatory work." Bourgeois v. Heritage Manor of Houma, 96-0135, p.6 (La.App. 1 Cir. 2/14/97); 691 So.2d 703. At trial, Dr. Waldman's bill regarding his fee for testifying was offered as Plaintiff's Exhibit 8. *1211 Dr. Waldman's fee for testifying was $244.00. We find an expert fee of $244.00 to be reasonable. Accordingly, we find that the trial court erred in failing to fix Dr. Waldman's expert fee, and we hold that an expert fee of $244.00 is to be taxed as part of the costs.

LEGAL INTEREST ON PENALTIES
In his judgment, the workers' compensation judge awarded penalties and attorneys fees, but did not award Mr. George legal interest on the penalties and attorneys fees. Mr. George asserts that the judge erred in failing to award legal interest from the date of judgment.
The fact that a workers' compensation judge is silent as to legal interest in his judgment does not constitute denial of such interest; legal interest is mandatory under the workers' compensation statute. Kortz v. Colt Energy Servs., Inc., 97-159 (La.App. 5 Cir.7/29/97), 698 So.2d 460. Legal interest is due on penalties and attorneys fees from the date of judgment in workers' compensation cases. See McLaughlin v. Hill City Oil Co./Jubilee Exxon, 97-577 (La.App. 3 Cir. 10/8/97); 702 So.2d 786, writ denied, 97-2797 (La.2/13/98); 706 So.2d 994; Sharbono v. Steve Lang & Son Loggers, 97-0110 (La.7/1/97); 696 So.2d 1382. This interest automatically attaches until judgment is satisfied, whether prayed for in petition or mentioned in judgment. See Crooks v. Town of Ball, 94-466 (La.App. 3 Cir. 11/2/94); 649 So.2d 597. Accordingly, the trial court did not err by not including an award of legal interest in its judgment. Such legal interest automatically attaches upon the award of penalties and attorneys fees under workers' compensation law. Thus, Mr. George is entitled to legal interest on the award of penalties and attorneys fees by the trial court from the date of judgment.

ATTORNEYS FEES ON APPEAL
In Mr. George's Answer to Defendants' appeal, he requests an additional award of attorneys fees for work done on appeal. A workers' compensation claimant is entitled to an increase in attorneys fees to reflect additional time incurred in defending an employer/carrier's unsuccessful appeal. See Hickman v. Allstate Timber Co., 94-1275 (La.App. 3 Cir. 4/5/95); 653 So.2d 154, writ denied, 95-1133 (La.6/23/95); 656 So.2d 1017; Aguillard v. Industrial Constr. Co., Inc., 542 So.2d 774 (La.App. 3 Cir.1989). The instant appeal necessitated additional preparation by Mr. George's attorney including the preparation of an answer, a brief, and trial. Accordingly, we find that Mr. George is entitled to an additional $2,500.00 in attorneys fees for his counsel's time spent on preparing this appeal.

DECREE
Considering the foregoing discussion, we hold that the decision of the trial court is affirmed as to the award of penalties and attorneys fees against LWCC for its refusal to authorize surgery. We further hold that the trial court did not err in awarding costs to the Plaintiff, Mr. George. We find that the trial court erred in failing to fix expert witness fees for Dr. Waldman's testimony, and we fix his fee at $244.00. In addition, we find that the trial court erred in not awarding penalties against LWCC for its underpayment of benefits to Mr. George. For that underpayment, we award $2,000.00 in penalties and $2,000.00 in attorneys fees against LWCC. Additionally, we award an additional $2,500.00 in attorneys fees for work done on appeal. All costs are assessed against Defendants, Tillman Guillory and LWCC.
AFFIRMED IN PART; RENDERED IN PART; REVERSED IN PART.