929 So.2d 258 (2006)
Dena ROMERO
v.
GARAN'S, INC., et al.
No. 05-1297.
Court of Appeal of Louisiana, Third Circuit.
April 19, 2006.
Rehearing Denied June 7, 2006.
*259 Michael B. Miller, Crowley, Louisiana, for Plaintiff/Appellee, Dena Romero.
H. Douglas Hunter, Opelousas, Louisiana, for Defendants/Appellants, Garan's, Inc. and Liberty Mutual Insurance Company.
Court composed of ULYSSES GENE THIBODEAUX, Chief Judge, SYLVIA R. COOKS, and JAMES T. GENOVESE, Judges.
GENOVESE, Judge.
In this workers' compensation case, Defendants are appealing the award of disability benefits, medical expenses, penalties and attorney fees, in favor of Plaintiff. Plaintiff has answered the appeal, seeking additional penalties and attorney fees. For the following reasons, we affirm in part, reverse in part, and render.

FACTS
Plaintiff, Dena Romero (Romero), began her employment with Garan's, Inc. (Garan) on May 28, 2000, as a folder in the finishing department. Romero alleges that she sustained a work-related injury to her neck and back on June 3, 2000, while bending over to place a folded shirt in a buggy.[1]
*260 Romero sought emergency medical treatment beginning on the day of the accident and continued to receive treatment thereafter by numerous physicians. An MRI revealed that Romero had a ruptured disc at the C6-7 level for which she underwent a cervical discectomy and fusion on August 23, 2000. On July 25, 2001, Romero was involved in an automobile accident and suffered personal injuries.
Romero had several complications as a result of the cervical surgery and saw numerous physicians over the course of her treatment. A subsequent MRI on June 24, 2003 revealed a herniated disc at the L5 level, and surgery was recommended to her by Dr. Blanda. The lumbar surgery was not approved by Defendants, Garan and its workers' compensation insurer, Liberty Mutual Insurance Company (Liberty Mutual), which disputed Romero's claim that her back problems were related to the June 3, 2000 accident.[2]
On April 2, 2002, Romero filed a disputed claim for compensation alleging that Garan failed to timely pay her weekly compensation benefits and medical expenses. Romero also sought penalties and attorney fees.
Trial was held on October 29, 2004, whereupon the workers' compensation judge (WCJ) determined that Romero's back complaints were related to her June 3, 2000 accident. The WCJ held that Romero was entitled to undergo treatment for her back pain, including surgery, and awarded her penalties for Garan's failure to pay for medical treatment regarding her back complaints, emergency room treatment and transportation after October 1, 2002, mileage, and $10,000.00 in attorney fees.
Garan has appealed, and Romero has answered the appeal seeking additional penalties and attorney fees.

ISSUES
The following issues are presented by Garan for our review:
1. Whether the workers' compensation judge erred in finding that Romero's injuries to her back were related to a compensable incident.
2. Whether the workers' compensation judge erred in finding that Romero is entitled to the cost of all emergency room visits which occurred after October 1, 2002.
3. Whether the workers' compensation judge erred in finding that Romero is entitled to an award of penalties and attorney fees on all matters.
Romero raises the following issues in her answer to appeal:
1. Whether the workers' compensation judge erred in failing to award sufficient penalties.
2. Whether the workers' compensation judge erred in failing to award sufficient attorney fees.
3. Whether Romero is entitled to additional attorney fees for defending the appeal of Garan.

LAW AND ARGUMENT

Standard of Review
The factual findings of the WCJ in a workers' compensation case are subject to the manifest error or clearly wrong *261 standard of review. George v. Guillory, 00-591 (La.App. 3 Cir. 11/2/00), 776 So.2d 1200. "In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one." Id. at 1206 (citing Stobart v. State, Dep't of Transp. & Dev., 617 So.2d 880 (La.1993)). Additionally, as recognized by this court in Corbello v. Coastal Chemical Co., Inc., 02-1241, p. 3 (La.App. 3 Cir. 3/5/03), 839 So.2d 1152, 1154, writ denied, 03-994 (La.5/30/03), 845 So.2d 1051 (quoting Mitchell v. Brown Builders, Inc., 35,022, p. 8 (La.App. 2 Cir. 8/22/01), 793 So.2d 508, 515, writ denied, 01-2649 (La.12/14/01), 804 So.2d 636):
It is a well-settled legal principle that the factual findings in workers' compensation cases are entitled to great weight. Reasonable evaluations of credibility and reasonable inferences of fact will not be disturbed even though the appellate court may feel that its own evaluations and inferences are as reasonable. The trier of fact's factual determinations shall not be disturbed in the absence of a showing of manifest error. When the trier of fact's findings are reasonable in light of the entire record, an appellate court may not reverse a choice between two permissible views of the evidence.
Finally, "[t]he determination of whether an employer should be cast with penalties and attorney fees is a question of fact which should not be reversed absent manifest error." Sigler v. Rand, 04-1138, pp. 10-11 (La.App. 3 Cir. 12/29/04), 896 So.2d 189, 196, writ denied, 05-278 (La.4/1/05), 897 So.2d 611 (citing Romero v. Northrop-Grumman, 01-24 (La.App. 3 Cir. 5/30/01), 787 So.2d 1149, writ denied, 01-1937 (La.10/26/01), 799 So.2d 1144).

Compensability of Back Injury
To recover workers' compensation benefits, a claimant must establish a "personal injury by accident arising out of and in the course of his employment." La.R.S. 23:1031(A). Louisiana Revised Statutes 23:1021(1) defines an "accident" as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." Additionally, a claimant must prove by a preponderance of the evidence that an employment accident occurred and that the accident had a causal relationship to the disability claimed. Jeanise v. Cannon, 04-1049 (La.App. 3 Cir. 2/23/05), 895 So.2d 651, writs denied, 05-785, 05-788 (La.5/13/05), 902 So.2d 1021. Garan contends that Romero's back condition was simply a gradual deterioration or progressive degeneration, and that the WCJ erred in finding that Romero proved that the accident of June 3, 2000 had a causal relationship to her back injury and resultant disability. We disagree.
The record of these proceedings contains voluminous medical records due to the extensive treatment Romero received from several healthcare providers including Dr. Blanda (an orthopaedist), Dr. Budden (an orthopaedist), Dr. Cuadra (a pain management specialist), Dr. Gillespie (a pain management specialist), Dr. Munshi (a neurosurgeon), Dr. Cole (a psychologist), Dr. Aprill (a radiologist), Dr. Lugo (a neurologist), and Dr. Jindia (a pain management specialist), as well as treatment at several hospitals. While at times Romero's back complaints were overshadowed by her cervical injury, the medical records do establish that she had an immediate *262 onset of back pain which continued, although sometimes sporadic, throughout the course of her treatment.
On the day of the incident, Romero sought treatment at Abrom Kaplan Memorial Hospital with complaints of back pain.[3] On June 7, 2000, she went to see Dr. Budden and voiced complaints of back pain. On June 24, 2000, Romero also complained of back pain at her initial visit to Dr. Blanda. Dr. Blanda ordered an MRI of the cervical and lumbar spine. The cervical testing showed a ruptured cervical disc at the C6-7 level. Dr. Blanda performed cervical surgery on Romero on August 23, 2000. Following surgery, Romero continued to experience significant problems.
As stated above, while the cervical injury required immediate attention, Romero did continue to complain of back pain intermittently as hereinafter set forth. She presented to Our Lady of Lourdes Regional Medical Center on January 24, 2001, and February 12, 2001, with complaints of low back pain. She complained of back pain to Dr. Gillespie in her initial evaluation of February 19, 2001. The physical therapy progress report of April 6, 2001 also documents lower back pain. When Romero first saw Dr. April on August 20, 2001, she complained of back pain. The medical records of Dr. Munshi of October 11, 2001 contain complaints of back pain suffered by Romero. Her low back complaints continued during her treatment with Dr. Cuadra, as illustrated by his records of January 31, 2002, and March 18, 2002. As a result of Romero's continuing complaints of back pain, an MRI was performed on June 24, 2003, which revealed a herniated lumbar disc, and which lead to Dr. Blanda's surgical recommendation. Although sometimes sporadic, Romero did continue to complain of pain in her back over the course of her treatment concomitant with her neck problems from June 2000 to present. Garan, however, does present a strong argument relative to Romero's back condition on the issue of causation, and this court may have viewed this case differently, but an appellate court may not reverse a choice between two permissive views of the evidence. Corbello, 839 So.2d at 1154.
Having fully reviewed Romero's extensive medical history, we do not find the decision of the WCJ that "the medical evidence taken in totality and in conjunction with other evidence supports the proposition that her present back conditions relate to the June 2000 accident" is manifestly erroneous. Consequently, we must affirm the judgment of the WCJ finding that Romero's back injury is causally related to her June 2000 accident, and that she is entitled to treatment therefor, including the recommended back surgery.

Emergency Room Visits
Garan asserts that the WCJ erred in finding that Romero was entitled to the cost of all emergency room visits after October 1, 2002. Garan also argues that considering the multitude of physicians with whom Romero was treating, she needlessly sought treatment at hospital emergency rooms. Garan contends that Romero is therefore not entitled to the award by the WCJ for the costs related to these emergency room visits which occurred after October 1, 2002. We agree.
The record reveals that on October 1, 2002, a prior WCJ entered a minute entry regarding several issues involving Romero's claim and the reasons for a continuance *263 of the scheduled trial fixing. That WCJ listed items to be considered by the parties prior to the next trial date and instructed counsel for Garan, Mr. Hunter, to "explore the possibility of his client authorizing a general practitioner to treat Ms. Romero as an alternative to her emergency room visits for times when she is unable to see her specialist in a quick time frame."
Angela Kleamenenakis, the case manager for Liberty Mutual, testified at trial about this issue. She acknowledged that the prior WCJ had instructed counsel for the employer/insurer (Mr. Hunter) to have his client authorize treatment for Romero with a general practitioner, rather than go to the emergency room for non-emergency treatment. However, the insurer never did approve such a visit with a general practitioner because "[a] request never came through." Despite the insurer's willingness to have Romero seen by a general practitioner, Liberty Mutual "didn't ever [sic] get a call that an appointment was scheduled or that the request was needed." Therefore, despite the prior WCJ's instruction in the October 1, 2002 minute entry, which attempted to eliminate numerous and unnecessary emergency room visits, Romero continued to go to the emergency room via ambulance.
According to Romero, she had been advised by her doctors to go to the emergency room on the weekends when regular visits were not available.[4] However, the evidence shows that of the fifteen visits by Romero to the emergency room, only two of these visits were on the weekend. Additionally, and most importantly, each of the six emergency room visits following the October 1, 2002 minute entry were during the regular work week without proof of a medical necessity for such emergency transportation and treatment, and without even attempting to contact any one of her numerous treating physicians. We find, and the record confirms, that on a number of occasions Romero simply chose urgent transportation and emergency room care instead of treatment with a general practitioner, contrary to the advice of her doctors and the minute entry of October 1, 2002. This is true despite the numerous treating physicians with whom she had already been authorized to see and receive treatment. For these reasons, we find that the non-weekend emergency room visits, and transportation therefor, occurring after October 1, 2002, were not proven to have been legitimate emergencies requiring emergency medical treatment and transportation. We, therefore, reverse that portion of the judgment of the WCJ ordering payment by Garan for all non-weekend emergency room visits and transportation occurring after October 1, 2002.

Penalties and Attorney Fees
Garan also contends that the WCJ erred by awarding penalties and attorney fees. Romero, in her answer to the appeal, argues that the WCJ failed to award penalties for all of the alleged violations, and that she should be awarded an increase in penalties and attorney fees.
The decision to impose penalties is a factual question, which will not be disturbed on appeal in the absence of manifest error. Spencer v. Gaylord Container Corp., 96-1230 (La.App. 1 Cir. 3/27/97), 693 So.2d 818. Louisiana courts have consistently held that failure to authorize a medical procedure for an *264 employee eligible to receive workers' compensation is deemed to be a failure to furnish compensation benefits, thereby triggering the penalty provisions of the Louisiana Workers' Compensation Act. Gay v. Georgia Pacific Corp., 32,653 (La.App. 2 Cir. 12/22/99), 754 So.2d 1101. Penalties and attorney fees shall be awarded if the employer or the insurer fails to timely pay benefits due claimant, unless the claim is reasonably controverted or such nonpayment results from conditions over which the employer or insurer had no control. La.R.S. 23:1201(F); Brown v. Texas-LA Cartage, Inc., 98-1063 (La.12/01/98), 721 So.2d 885. The supreme court in Brown went on to state that:
in order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits. Thus, to determine whether the claimant's right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La.R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.
Brown, 721 So.2d at 890.
Frank v. Kent Guidry Farms, 01-727, p. 3 (La.App. 3 Cir. 5/8/02), 816 So.2d 969, 971-72, writ denied, 02-1608 (La.6/27/03), 847 So.2d 1273.
In the case at bar, the WCJ's reasons for judgment simply state that Romero was entitled to penalties and attorney fees due to the nonpayment of various medical bills and mileage. For the failure to pay these expenses, the WCJ awarded Romero a total of $8,000.00 in penalties as follows:
1. $2,000.00 for the failure to pay Dr. Blanda's bill dated May 4, 2000;[5]
2. $2,000.00 for the failure to pay for emergency room treatment after October 1, 2002;
3. $2,000.00 for the failure to authorize back surgery recommended by Dr. Blanda; and
4. $2,000.00 for the failure to pay mileage.
Romero was also awarded $10,000.00 in attorney fees.
Garan argues on appeal that the treatment relating to Romero's back pain was reasonably controverted on the issue of causation. Likewise, Garan asserts that the dispute over the emergency room expenses was reasonably controverted so as to preclude an award of penalties for the refusal to pay these medical and related expenses.[6] We agree.
Although the WCJ found Romero's back treatment to be compensable, and that she was entitled to the back surgery recommended by Dr. Blanda, he expressly noted on the issue of causation that "[i]f you carefully parse the medical records, one page at a time, one question and answer at *265 a time, it is not difficult to extract statements and draw inferences which at least tend to support both sides." Having carefully reviewed the medical records and depositions of Drs. Blanda and Caudra as to the issue of causation, this court does not find manifest error in the WCJ's ruling which relates Romero's back complaints to the June 2000 accident. We also agree with the WCJ that a problem with this case is that Romero's treatment was "never funneled through one physician. Rather, [it was] scattered seemingly throughout the entire medical community in this area." Given the medical history, and considering the apparent difficulty of both Dr. Blanda and Dr. Caudra to relate the back complaints to the June 3, 2000 accident, we find that the WCJ was manifestly erroneous in imposing a penalty for the failure to pay Dr. Blanda's bill of May 4, 2004, and in imposing a penalty for the failure to approve the recommended back surgery. Although we do find that Romero's back treatment is compensable, there was a serious question and issue of causation relative to her back problem which we find was reasonably controverted by Garan.
Considering the medical evidence in the record, Romero's motor vehicle accident on July 25, 2001, and for the reasons set forth above, we find that Romero's entitlement to treatment for her back complaints, including the back surgery and related expenses, to have been reasonably controverted. Accordingly, the judgment of the WCJ awarding Romero a $2,000.00 penalty for the failure to pay Dr. Blanda's bill of May 4, 2004, and a $2,000.00 penalty for the failure to authorize the back surgery with Dr. Blanda, is reversed.
Additionally, as set forth above on the issue of emergency room visits and transportation therefor occurring after October 1, 2002, we find that these medical expenses were reasonably controverted by the employer. Accordingly, the judgment of the WCJ awarding Romero a $2,000.00 penalty for the failure to pay these medical expenses is reversed.

Plaintiff's Answer to Appeal
In her answer to appeal, Romero seeks additional penalties and attorney fees for alleged violations of the workers' compensation act for which no penalties were assessed. On the issue of penalties, the oral reasons for judgment reflect that the WCJ "reviewed [Plaintiff's] request for penalties, discounted some, consolidated some, denied some." Plaintiff alleges several additional violations of the workers' compensation act for which she seeks additional penalties, which will be classified as (1) medical expenses, (2) mileage expenses, and (3) weekly compensation benefits.
Romero alleges the non-payment of several medical expenses for which an additional penalty is sought including: (1) an invoice from Dr. Saul Polsky for an emergency room visit dated October 7, 2003; (2) an invoice from Lafayette General Medical Center dated January 13, 2004; (3) an invoice from Thrifty Way Pharmacy dated April 16, 2002; (4) an invoice from Opelousas Radiology dated April 2, 2003; and, (5) a radio frequency injection recommended by Dr. Quadra in November of 2002. Having reviewed the evidence on the non-payment of these medical expenses, we find these expenses to be compensable under the workers' compensation act and are to be paid by Garan; however, for the reasons set forth above relative to our finding herein that Garan reasonably controverted the issue of causation pertaining to Romero's back injury, we decline to award a penalty for the non-payment of these medical expenses.
Under the classification of mileage reimbursement, Romero argues that there were five occasions when Garan failed to pay her mileage, or paid her an incorrect amount. According to the record, these five occasions were December 9, 2002, *266 June 6, 2003, July 7, 2003, November 11, 2003, and August 3, 2004. However, as noted above, the WCJ previously addressed this issue, but only awarded Romero a total penalty of $2,000.00 for "failure to pay mileage." The record indicates that on four of these five occasions, Garan failed to pay the correct amount owed. Therefore, as set forth in La.R.S. 23:1201(F), we award a $2,000.00 penalty for each of the four violations above set forth.
Finally, Romero asserts in her answer to the appeal that her compensation checks were paid a week late by Garan and that she is therefore entitled to a penalty for Garan's failure to pay weekly compensation benefits timely. The record reveals that Romero was injured during her first week of work with Garan and was paid compensation benefits every two weeks thereafter until May 21, 2002. There is no evidence in the record that Romero was to be paid weekly prior to her injury. Because she was injured during her first week of work, and there was no agreement to the contrary, no payment schedule, weekly or otherwise, had been established. Consequently, no penalty is warranted therefor.
Romero also asserts on appeal that the $10,000.00 attorney fee award is unreasonably low. The factors to be considered when determining "the amount of attorney fees to be awarded in workers' compensation cases are the degree of skill and ability exercised by the attorney, the amount of the claim, the amount recovered for the claimant, and the amount of time the attorney devoted to the case." Langley v. Petro Star Corp. of La., 01-198, p. 11 (La.6/29/01), 792 So.2d 721, 727 (citing McCarroll v. Airport Shuttle, Inc., 00-1123 (La.11/28/00), 773 So.2d 694). Considering the above factors, we find that the attorney fee award of $10,000.00 in the present case is not so unreasonably low as to be manifestly erroneous. We, therefore, find that this assignment of error is without merit.
Finally, Romero's answer to the appeal also seeks additional attorney fees for the appeal of this case. Because attorney fees were correctly awarded by the trial court, failing to award increased attorney fees for the additional work required for this appeal would be inconsistent with that judgment. Accordingly, we award an additional $3,500.00 in attorney fees for the work necessitated by the present appeal.

DECREE
For the foregoing reasons, the judgment of the WCJ finding that Romero's back complaints were related to the June 3, 2000 accident is affirmed. The judgment of the WCJ awarding a $2,000.00 penalty for the failure to pay Dr. Blanda's bill of May 4, 2004 is reversed. The judgment of the WCJ awarding a $2,000.00 penalty for the failure to authorize back surgery is reversed. The judgment of the WCJ awarding a $2,000.00 penalty for the failure to pay for emergency room visits and transportation after October 1, 2002 is reversed. The judgment of the WCJ awarding a total penalty of $2,000.00 for the failure to pay mileage is amended to increase said penalty to $8,000.00, and is affirmed as amended. The judgment is affirmed in all other respects. Additionally, judgment is rendered in favor of Romero in the amount of $3,500.00 in additional attorney fees for the work necessitated by the present appeal.
Costs of this appeal are assessed against the Defendants.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
NOTES
[1] The exact date of injury is not clear from the record. The disputed claim for compensation sets forth a date of injury of June 3, 2000. However, elsewhere in the record the date of injury is referenced as June 5, 2000.
[2] Both Garan's, Inc. and Liberty Mutual Insurance Company are Defendants in this law-suit. However, for purposes of this opinion, we will hereafter refer to them collectively as Garan.
[3] Romero also complained of neck pain; however, since the issue in the present appeal is the compensability, vel non, of her back injury, we will not recite each instance of cervical pain reported by the claimant as such is unnecessary.
[4] We do note that Romero's general practitioner, Dr. Tate, did not accept workers' compensation patients. However, this was never communicated to Garan. Additionally, once Romero became aware of Dr. Tate's policy, she did not inform Garan of her inability to see Dr. Tate, nor did she request authorization to see any other general practitioner.
[5] There appears to be a typographical error in the trial court judgment referencing Dr. Blanda's bill dated "5-4-00." Claimant's injury did not occur until June of 2000; therefore, there could not have been a bill before the injury in question. The testimony at trial, and the bill which was introduced into evidence, confirm that the actual date of service was May 4, 2004.
[6] Although Garan assigns as error the WCJ's award of penalties on all matters, the penalty award for the failure to pay mileage was not briefed by Defendants. Accordingly, pursuant to Uniform Rules  Courts of Appeal, Rule 12.4, we consider this assignment of error abandoned.