| ?.JAMES, Judge Pro Tem.
In this workers’ compensation case, plaintiff, Welmon Comeaux, appeals a summary judgment rendered by the Office of Workers’ Compensation Administration (the OWC)[3] in favor of defendant, Star Enterprise/Motiva Enterprise (Star).
FACTS AND PROCEDURAL HISTORY
Plaintiff filed a disputed claim for compensation, averring that bacteria found in industrial dust entered into his body causing an occupational disease, nocardiosis. It is plaintiffs contention that during the 26 years he worked for Star, he was exposed to open-storage containers of crude oil and high volumes of contaminated dust. Plaintiff also contends that he may have inhaled the bacteria during two fires at the refinery in 1996 and 1997. Star and its insurer, The Continental Insurance Group, denied that plaintiff contracted an occupational disease and that plaintiffs medical problems were employment related.
In due course, Star filed a motion for summary judgment alleging that there was no support for plaintiffs claim that he contracted a work-related occupational disease. Star correctly asserted that in order to prevail on his claims, plaintiff would have to prove, by a preponderance of the evidence, (1) that he suffers from a disability; (2) that the disability is related to an employment-related disease; (3) that he contracted the disease during the course and scope of his employment; and (4) that the disease is a result of the work performed. Star argued that plaintiff could not produce evidence that would prove *361 those elements at trial and offered the deposition testimony of two physicians to show that the bacteria that caused plaintiffs illness is not specific to his work environment.
|3In opposition to the motion, plaintiff filed a memorandum including excerpts from various publications. He also offered his own affidavit and that of his sister, as well as other correspondence and documents exchanged with his employer. However, plaintiff produced no affidavits or depositions of medical experts to prove that it was more probable than not that his exposure to the bacteria that caused his illness was work related.
After a hearing on the matter, the workers’ compensation judge (WCJ) granted Star’s motion for summary judgment, being convinced that there was no evidence of a causal connection between the alleged disease and the conditions of plaintiffs employment.
On appeal, plaintiff assigns two related errors for our review. First, he contends that disputed facts exist regarding nocar-diosis such that a summary judgment should not have been granted. Secondly, he argues that the WCJ erred in relying on the testimony of the physicians whose depositions were submitted in support of Star’s motion for summary judgment.
STANDARD OF REVIEW
A motion for summary judgment is a procedural device used to avoid a full-scale trial where there is no genuine issue of material fact. It should only be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ. P. art. 966; Zeringue v. Karl Ott Poles & Pilings, 2000-0522, p. 3 (La.App. 1st Cir.5/11/01), 808 So.2d 628, 630.
Appellate courts review summary judgments de novo under the same criteria that govern the trial court’s determination of whether a summary judgment is appropriate. Because it is the applicable substantive law that determines [4materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Zeringue, 2000-0522 at p. 4, 808 So.2d at 631. To prevail on his claims, plaintiff must prove by a preponderance of the evidence that he suffers from a disability related to an employment-related disease that was contracted during the course of his employment as a result of work performed. See Price v. City of New Orleans, 95-1851, p. 8 (La.App. 4th Cir.3/27/96), 672 So.2d 1045, 1049, writ denied, 96-1016 (La.10/25/96), 681 So.2d 360; see also La. R.S. 23:1031.1.
Summary judgments are now favored, and the documents submitted by both parties are to be equally scrutinized. The initial burden of proof remains with the mover to show that no genuine issue of material fact exists. However, if the mover will not bear the burden of proof at trial on the matter, the mover is not required to negate all essential elements of the adverse party’s claim. If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. La.Code Civ. P. art. 966C(2). If the non-moving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. La.Code Civ. P. arts. 966C(2) & 967; Zeringue, 2000-0522 at pp. 3-4, 808 So.2d at 630-631.
*362 Star will not bear the burden of proof at trial; therefore, its burden on the motion for summary judgment does not require it to negate all essential elements of plaintiffs claim. La.Code Civ. P. art. 966C(2). Rather, Star’s burden on the motion for summary judgment is to point out to the court that there is an absence of factual support for one or more elements essential to plaintiffs claim. La. Code Civ. P. art. 966C(2); Babin v. Winn-Dixie Louisiana, Inc., 2000-0078, p. 4 (La.6/30/00), 764 So.2d 37, 39. Thereafter, if plaintiff cannot provide factual evidence | insufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact, and summary judgment should be granted. La.Code Civ. P. art. 966C(2).
COMEAUX’S CLAIM
In support of its motion for summary judgment, Star introduced into evidence the deposition of Dr. Cullen Hebert, plaintiffs treating physician. Dr. Hebert is board certified in the specialties of internal medicine and pulmonary medicine. He first treated plaintiff in 1997 for sarcoido-sis, a different disease from the one at issue in this case. Plaintiff was treated with steroids from April through November 1998 for complaints of shortness of breath, decreased appetite, and fatigue. In July 1998, plaintiff was hospitalized for a fainting episode, and it was discovered that he had lesions that, when cultured, showed his body was harboring a bacteria known as nocardiosis. He was placed on antibiotics through November 1999 to treat that condition. By November, he had recovered, and Dr. Hebert felt that it was unlikely that he would be subject to a relapse.
Dr. Hebert testified that he has a high population of patients with sarcoidosis and that the cause of that condition is unknown.[4] He has seen two cases of nocar-diosis and testified that he was unable to say that it was related to plaintiffs work environment. Nocardiosis is a bacteria that is common in the environment, in soil and vegetables. Dr. Hebert specifically indicated that he did not believe plaintiff would have picked up this bacteria from a fire at a refinery because he did not believe the bacteria could live through a fire. In his view, nocardiosis is an opportunistic bacterium that takes advantage of a situation where someone’s immune system is unable to fight off its effects. Dr. Hebert was of the opinion that the steroid treatment for sarcoidosis might have affected plaintiffs immune system, but he did not know from what source the actual bacteria that caused the 1 ^nocardiosis came. When asked if either the sarcoidosis or nocar-diosis were work related, Dr. Hebert responded;
I can’t. I cannot in all honesty say that there was a direct relationship between him being at his work site and developing either of these conditions.
Star also introduced the deposition testimony of Dr. Joseph William Brown, III. Dr. Brown, who is board certified in infectious diseases and microbiology, first saw plaintiff for a consultation in 1998 at the request of Dr. Hebert. Dr. Brown agreed with Dr. Hebert that sarcoidosis, the disease plaintiff was originally being treated for, is a disease of unknown etiology. When Dr. Brown saw plaintiff in July 1998, he believed, based on symptoms and a laboratory culture, that plaintiff had no-cardiosis. He testified that Nocardia is an organism widely spread in nature and *363 looked upon as a soil borne organism. It can find its way into the human system by inhalation or by getting into a wound, such as a contaminated injury to a foot while working in a field. An individual with sarcoidosis is predisposed to be susceptible to the bacteria that causes nocardiosis, and those with weakened immune systems from drugs, HIV, aging, vascular disease, and steroid treatments are more at risk than the general population. As to the work-related nature of the illness, Dr. Brown testified:
This particular bug, with it being so ubiquitous or widespread in nature, you can’t say where the person got it. Now, if Welmon lived in a city in an apartment; did nothing outdoors except go back and forth to work; worked in a field where there was lots of dust; then you would say the probability is that’s where he had his exposure.... If there were a large number of people, or at least a few other people working in the same situation as the commonality, and there was an infection, and nobody else in the community got it, then you would say that that likely was acquired in the work place.... This — you know, we know Welmon has sarcoidosis, steroids, and that he has Nocardia. Where the dust that he breathed in that had the bug in it came from, you know, retrospectively I can’t say.
|7At most, Dr. Brown would agree that plaintiff could have inhaled the bacteria from dust in a fire at a refinery, but had that been the case, it would be expected that many others exposed at the same time would have the condition.
In opposition to Star’s motion, plaintiff did not produce evidence of other workers contaminated with Nocardia in connection with the refinery fires in 1996 or 1997. Nor did he produce any medical testimony to support his claim that there was a link between the nocardiosis that he contracted and his employment. He introduced his own affidavit to establish that he worked many years for Star for long hours, six to seven days per week. However, that affidavit in no way ruled out his having inhaled the bacteria away from his place of employment, since it is common in nature. Nor did it negate the scenario that he succumbed to it because of the predisposing conditions of sarcoidosis and steroid treatment, which is the scenario his treating physician considered most likely. The affidavit statements of the plaintiff and his sister to the effect that Dr. Brown told them plaintiff contracted nocardiosis from inhalation of contaminated industrial dust were contradicted by the actual deposition testimony of Dr. Brown.
We are not persuaded that plaintiff demonstrated an ability to prove medical causation or established the existence of a genuine issue of material fact through the excerpts from publications that were included in his memorandum in opposition to Star’s motion. Those publications were not introduced into evidence, were not proven as authoritative, and did not establish the causal link at issue. We are likewise unimpressed with plaintiffs attack on the qualifications of his treating physician, who is board certified in areas specifically related to nocardiosis. The fact that he may have seen few cases of nocardiosis does not alone render his expert testimony incompetent, particularly in view of the total lack of countervailing medical opinion offered by plaintiff.
|sBased on our independent review of the evidence adduced, we do not believe that the OWC erred in concluding that plaintiff failed to demonstrate that he would be able to bear his burden of proof at trial that his disease was an occupational disease caused by work-related conditions. Plaintiff has the burden of proving *364 by a preponderance of the evidence that he suffers from a disability related to an employment-related disease that was contracted during the course of his employment as a result of work performed. The causal link between his illness and work-related duties must be established by a reasonable probability. Seal v. Gaylord Container Corp., 97-0688, p. 6 (La.12/2/97), 704 So.2d 1161, 1165. The claimant will fail if he shows only a possibility that the employment caused the disease, or that other causes not related to the employment are just as likely to have caused the disease. Shields v. GNB Technologies, Inc., 33,911, p. 7 (La.App.2d Cir.10/4/00), 768 So.2d 774, 780. Statements by doctors that plaintiffs condition could be related to work allegedly performed in connection with a refinery fire do not support a finding that plaintiff could sustain his burden of proof at trial. King v. Stranco, Inc., 2000-2003 (La.App. 1st Cir.11/9/01), 818 So.2d 48, 52.
Star has pointed out to the court that there is an absence of factual support for an essential element of plaintiffs claim, i.e., causation. Plaintiff has failed to produce factual evidence sufficient to establish that he will be able to satisfy his evidentia-ry burden of proof at trial as to that issue. Thus, there is no genuine issue of material fact, and the OWC properly granted summary judgment in favor of Star.
CONCLUSION
For the reasons set forth above, we affirm the decision of the OWC granting 1 asummary judgment in favor of Star with regard to plaintiffs claim. Costs of this appeal are assessed against plaintiff, Wel-mon Comeaux.
AFFIRMED.

.La. R.S. 23:1310.5(F) requires that the published court of appeal opinion identify the office of workers' compensation district from which the appeal was taken and the name of the workers’ compensation judge (WCJ) who rendered the judgment. The WCJ was Honorable Anthony P. Palermo of the Office of Workers' Compensation Administration, District 5.

. Plaintiff acknowledges in brief to this court that he has never filed a claim for benefits for sarcoidosis and that he does not dispute the finding of the OWC that his disease of sarcoi-dosis is not work related.