J^FOIL, J.
In this appeal, claimant-appellant, Brandon Barnett, seeks reversal of the Office of Workers’ Compensation (“OWC”) ruling that dismissed his claim for benefits. We affirm.
I. FACTUAL AND PROCEDURAL BACKGROUND
On about January 9, 2002, Barnett, who was employed by A & R Transportation (“A & R”), was involved in a work accident while on site at one of A & R’s warehouse facilities.[1] Barnett and his supervisor, Louis Cox, were performing some mechanical work on a pickup truck. While the truck was jacked up and Barnett was under the truck, Cox opened the truck door to start the engine. When Cox exited the truck, he left the door open. Afterwards, Barnett came out from under the truck and stood up. As he did so, he struck the bottom of the door with his head. He then fell down to his knees.
Cox testified that Barnett “cussed” and sat down for a while before returning to work. Barnett testified that he heard a “crunching” in his neck when he hit his head and developed a knot on his head. He testified that he “took it easy the rest of the day.” Co-worker, Suzette Templet, was present when Barnett injured himself, but she did not see him hit his head because she was not facing the truck on which Cox and Barnett were working. However, upon hearing “a |3string of expletives,” she turned and saw him holding his head. She said it was obvious that he had hit his head.
According to Barnett’s testimony, “a few days to a week or two afterwards,” he started having a burning sensation down the right side of his back, and he began to experience numbness in his arms and fingers. He also experienced difficulty sleeping due to “throbbing and tingling” in his arms and hands. He denied having these problems before the accident.
Barnett did not immediately seek medical attention, but did so on January 18, 2002. A nurse practitioner, James L. Den-ney, examined Barnett, who reported symptoms of pain in the cervical and thoracic spine and numbness and tingling in his arms and hands. During the exam, Barnett reported that he had been involved in a prior work-related accident in 1998, involving injury to his cervical, thoracic, and lumbar spine.[2] Barnett also *658 reported that despite chiropractic treatments for a year following the 1998 injury, he continued to experience intermittent pain. Following Denney’s examination, he ordered an x-ray examination of Barnett’s cervical spine and electromyelogram (“EMG”) studies of his arms. Barnett initially thought that Denney was a doctor, but upon discovering that he was a nurse practitioner, Barnett sought further medical treatment.
On February 14, 2002, Barnett was examined by Dr. Pervez Mussarat, a neurologist. At that time, he complained of pain and numbness coming down from his neck to his right arm. Dr. Mussarat ordered farther testing that included magnetic resonance imaging (“MRI”) and EMG studies. Dr. Mussarat determined pthat the MRI of the neck was not significant, but the EMG was suggestive of cervical radiculo-pathy and carpal tunnel syndrome. He prescribed physical therapy for Barnett’s neck and back pain, and a hand splint and possible carpal tunnel release (“CTR”) surgery to alleviate Barnett’s hand symptoms. Barnett began physical therapy treatments in June 2002. Barnett’s symptoms of numbness in his hands continued, and Dr. Mussarat referred Barnett to Dr. Brett Chiasson, an orthopedic surgeon, who first saw Barnett on August 27, 2002. Dr. Chi-asson reviewed tests that had been previously performed and diagnosed bilateral carpal tunnel syndrome and some bilateral C7 and C8 radiculopathy. He recommended bilateral carpal tunnel release surgery, which was performed on September 11, 2002.
Prior to the surgery, Barnett missed work only for doctor appointments. Following the surgery, Dr. Chiasson released Barnett to light-duty work (no lifting over 20 pounds and limited use of hands) on October 24, 2002, and then to full-duty work on November 21, 2002. The record establishes that Barnett returned to work after the surgery but later quit his employment with A & R.
Barnett did not immediately file an accident report with A & R because he did not initially attribute his neck and back pain to the accident. He testified that Dr. Mussa-rat informed him in February that his problems were caused due to his head injury. Barnett stated that as soon as he received that information, he reported the accident to A & R. Suzette Templet, an A & R employee, completed an “Employer Report of Injury/Illness” on February 18, 2002. Thereafter, Mary Markham of ESIS, the company that administered A & R’s workers’ compensation insurance, investigated Barnett’s claim for medical expenses. ESIS paid some of |fithe medical expenses that Barnett incurred after the January 2002 work accident, including fees for some physician’s services, some of the diagnostic testing, and some of Barnett’s physical therapy costs incurred during 2002. ESIS did not pay expenses related to the CTR surgery and numerous pharmaceutical expenses.
Barnett hired counsel and filed a disputed claim for compensation with the OWC on September 4, 2002, that referenced the January 2002 work accident and the carpal tunnel syndrome diagnosis. Pursuant to this claim, Barnett sought recovery of disability benefits and medical and travel expenses. Following a hearing, the OWC dismissed Barnett’s claims for additional workers’ compensation benefits, stating as follows:
Considering the law and evidence, particularly the testimony of Louis Cox, Doctors Mussarat, Chaisson (sic) and Morgan, the Court concludes there to be insufficient, objective medical evidence to support a claim for benefits as a result of the injury received in January 2002 to Barnett’s lumbar/cervical re *659 gions through clear and convincing evidence, or that his claims for carpal tunnel syndrome is causally connected to his employment activities by a preponderance of the evidence.
Barnett has appealed the OWC ruling, asserting that the OWC erred in failing to: 1) apply the correct standard of review; 2) find that he suffered a work-related accident; 3) presume that his disability was caused by the work-related accident; 4) find that his carpal tunnel problems were work-related; 5) award medical and travel expenses that were related to his cervical/lumbar injury and his carpal tunnel syndrome; 6) award compensation payments for time missed from employment due to treatment of his work-related injuries; and 7) award penalties and attorneys’ fees.
| fiII. ANALYSIS
In the present case, Barnett seeks to recover disability benefits and medical and related travel expenses associated with the January 2002 accident. He likewise claims that his carpal tunnel syndrome is an occupational disease and that he is entitled to recover related benefits and expenses. Although A & R does not concede that Barnett was involved in a work-related accident during January 2002, A & R primarily challenges whether that accident caused Barnett’s injuries or any resulting disability. A & R also disputes that the carpal tunnel syndrome is work-related.
A. Standard of Review
At the outset, we address Barnett’s claim that the OWC applied the wrong standard of review in reaching its conclusions. He submits that the OWC committed an error of law by requiring him to prove that the accident, his resulting cervical and back injuries, and his carpal tunnel syndrome were related to his employment by “clear and convincing evidence,” rather than the less stringent “preponderance of the evidence” standard. Barnett insists that this court should conduct a de novo review of this matter without regard to the OWC’s findings.
We disagree. Considering the language of the judgment, it is apparent that the OWC applied the “clear and convincing” standard to the issue of Barnett’s entitlement to indemnity benefits, finding that he failed to prove he was disabled as a result of a work accident. Pursuant to La. R.S. 23:1221(l)(e), a claimant has the burden of proving a temporary, total disability by clear and convincing evidence. Thus, it is proper for the OWC to reference this standard of review in connection with the indemnity benefit claim. Furthermore, the OWC plainly | ^referenced the “preponderance of the evidence” standard in ruling on the carpal tunnel syndrome claim. The language utilized by the OWC does not establish that it applied the clear and convincing evidence standard to the causation issues in the case, and therefore, we find that Barnett failed to demonstrate that the OWC’s fact-finding process should be interdicted due to legal error.
Accordingly, we shall apply the traditional standard of review in this appeal. In a worker’s compensation case, the appellate court’s review of facts is governed by the manifest error or clearly wrong standard. Smith v. Louisiana Dep’t of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129,132. Thus, a factual finding cannot be set aside unless the appellate court finds that it is manifestly erroneous or clearly wrong. Stobart v. State through DOTD, 617 So.2d 880, 882 (La.1993). In order to reverse a fact finder’s determination of fact, an appellate court must review the record in its entirety and 1) find that a reasonable factual basis does not exist for the finding, and 2) further determine that *660 the record establishes that the factfinder is clearly wrong or manifestly erroneous. Id. The appellate court must be cautious not to re-weigh the evidence or to substitute its own factual findings because it would have decided the case differently. Pinsonneault v. Merchants & Farmers Bank & Trust Co., 2001-2217, p. 11 (La.4/3/02), 816 So.2d 270, 278-279. Where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 883.
|SB. Claim Regarding Neck and Back Pain
In order for a claimant to recover workers’ compensation benefits, he must prove by a preponderance of the evidence that a work-related accident occurred and that an injury was sustained as a result of that accident. Davis v. Farm Fresh Food Supplier, 2003-1381, pp. 3-4 (La.App. 1st Cir.5/14/04), 879 So.2d 215, 218-219. To be entitled to disability benefits, the work-related injury must be disabling, whether it be temporary or permanent. Pursuant to Louisiana Revised Statutes 23:1221(l)(c), a claimant has the burden of proving a temporary, total disability by clear and convincing evidence. In the absence of clear and convincing evidence that the claimant is physically unable to engage in any employment, the claimant’s demand for temporary, total disability benefits fails. Walker v. High Tech Refractory Services, Inc., 2003-1621, p. 3 (La.App. 1st Cir.6/25/04), 885 So.2d 1185. The issue of disability within the framework of the workers’ compensation law is a legal rather than a purely medical determination. The issue of disability is determined with reference to the totality of the evidence, including both lay and medical testimony. Id. While the worker’s compensation laws are to be construed liberally in favor of the claimant, that interpretation cannot lessen the claimant’s burden. Isaac v. Lathan, 2001-2639, p. 13 (La.App. 1st Cir.11/8/02), 836 So.2d 191, 199.
Despite Barnett’s neck and back pain, he continued to work after the January 2002 accident until he underwent the CTR surgery in September 2002. After the surgery, upon obtaining a medical release to return to his full work duties on November 21, 2002, Barnett returned to work. Thus, since Barnett has not established that his neck and back symptoms resulted in either a disability or an | ninability to earn the wages he previously earned, he is not entitled to recover disability benefits with respect to his neck and back symptoms. La. R.S. 23:1221.[3] Furthermore, since Barnett has not established a disability related to his neck and back symptoms, we pretermit addressing whether the court erred in failing to apply any presumptions regarding the cause of such disability.
However, an employer has a statutory duty to furnish all necessary medical treatment caused by a work-related injury. La. R.S. 23:1203; Walker v. High Tech Refractory Services, Inc., 2003-1621 at p. 4, 885 So.2d at 1188. The right to medical expenses is separate and distinct from the right to disability benefits. Id. Accordingly, an employee may recover medical expenses even though there is no recovery for disability benefits. To recover medical expenses under Louisiana Re *661 vised Statutes 23:1203, the claimant must prove by a preponderance of the evidence that the expenses are reasonably necessary for treatment of a medical condition caused by the work injury. Walker v. High Tech Refractory Services, Inc., 2003-1621 at p. 4, n. 2, 885 So.2d at 1188. Additionally, claimant is entitled to reimbursement for all reasonable and necessary expenses incurred in relation to the aggravation of a pre-existing condition. Begue v. Crossover, Inc., 2003-0267, p. 14 (La.App. 1st Cir.11/21/03), 868 So.2d 100, 108.
The OWC found that Barnett’s claim for benefits related to his alleged cervical and lumbar injuries was not supported by sufficient medical evidence. Accordingly, we address the evidence presented to determine whether the OWC’s finding is supported by the record.
|inDr. Mussarat, Barnett’s treating neurologist, testified that it was possible to have cervical radicular symptoms with the type of injury suffered by Barnett. He also acknowledged that the January 2002 accident could have caused the cervical injury or aggravated it. However, when further questioned about the cause of the cervical radiculopathy, Dr. Mussarat opined that if Barnett had suffered previous injury to his cervical and lumbar spine and had experienced similar symptoms pri- or to the January 2002 accident, the previous injury could have caused his symptoms. Dr. Mussarat explained that the diagnostic testing did not establish the cause of the radiculopathy. Dr. Mussarat opined that if Barnett did not have complaints prior to the work-related accident, his injury could be related to the work-related accident. On the other hand, he opined that if Barnett was having problems before the January 2002 trauma, it would be difficult to say which incident caused his symptoms.
Barnett’s testimony established that he had sustained previous injury to his back in 1998. The record also reveals that following the 1998 injury, Barnett received medical treatment for his neck, thoracic and lumbar regions. Additionally, Suzette Templet testified that prior to the 2002 accident, Barnett had complained about back problems “[o]n and off ovér the years.” She stated that she had worked with him since 1999, and she knew that he suffered from chronic back pain. She also testified that on her recommendation, he began regular chiropractic treatments as of early Fall 2001.
Accordingly, based on the lay and medical evidence presented, we conclude that the record supports the OWC’s finding that Barnett failed to establish by -a preponderance of the evidence that the January 2002 work-related accident was luthe cause of his cervical and lumbar pain. Based on the testimony of Dr. Mussarat, Cox, and Templet, the OWC had a basis for concluding that because Barnett had suffered a previous injury, and had experienced similar symptoms of pain prior to the January 2002 accident, the previous injury was the cause of his symptoms rather than the January 2002 accident. The OWC apparently determined that the evidence presented was not sufficient to establish by a preponderance of the evidence that the January 2002 accident either caused Barnett’s neck and back condition or aggravated it.
C. Carpal Tunnel Syndrome
Barnett argues that his carpal tunnel syndrome was caused by the nature of the job duties that he regularly performed for A & R.[4] A & R urges that the *662 medical evidence supports the OWC’s finding that the carpal tunnel syndrome was not caused by Barnett’s employment activities.
Louisiana Revised Statute 23:1031.1 A entitles every employee who is disabled because of the contraction of an occupational disease to receive compensation benefits, provided that the employee’s illness arises out of and in the course of his employment. An injury due to work-related carpal tunnel syndrome is specifically included as an occupational disease under Louisiana Revised Statute 23:1031.1 B. A claimant has the burden of proving by a preponderance of the evidence that he suffers from a disability related to an employment-related disease that was contracted during the course of his employment as a result of 11f.work performed.[5] Comeaux v. Star Enterprise/Motiva Enterprise, 2002-0024, p. 8 (La.App. 1st Cir.12/20/02), 836 So.2d 359, 363-364. The causal link between his occupational disease and work-related duties must be established by a reasonable probability. The claimant will fail if he shows only a possibility that the employment caused the disease, or that other causes not related to the employment are just as likely to have caused the disease. Id.
Barnett began working for Butler Transportation, A & R’s predecessor, in Texas around 1997, at which time he washed tanks. At some point in 1998, A & R purchased Butler Transportation. Barnett began working at A & R’s Baton Rouge facility, where he washed pneumatic bulk truck tanks on a daily basis. For about two years preceding the January 2002 accident, Barnett was working at A & R’s facility in Pearlington, Mississippi, where he was performing a variety of tasks. Barnett testified that he worked on a packaging line, drove a forklift, washed truck tanks, and performed mechanical work. Barnett stated that his tank-washing duties were primarily in the afternoons. He stated that although the tank washing was not always a daily task, there were some weeks when he washed tanks on a daily basis. Barnett testified that he washed the tanks with a pressure hose, which involved squeezing the trigger on the hose and moving his hand and wrist from side to side while reaching down inside the tank.
11sCox testified that Barnett was the supervisor of tank washing, but he also stated that Barnett’s duties included mechanic work, warehouse packing, grass cutting, weed-eating and operating a forklift. In describing the tank-washing process, Cox first described the hose used to wash the tanks as a “regular garden hose” but then elaborated that “towards the end they would use a snake hose and take the tip off the hose. It was like a pressurized garden hose.” Barnett attested that his mechanic duties involved performing routine maintenance on trucks, such as replacing hoses.
Regarding the development of the carpal tunnel syndrome symptoms, Barnett testified that after hitting his head in January 2002, he began having numbness in his hands and difficulty sleeping due to these symptoms. Dr. Mussarat diagnosed *663 carpal tunnel syndrome in June of 2002. Dr. Mussarat referred Barnett to Dr. Chi-asson, who performed the CTR surgery in September 2002.
In support of his claim that the OWC erred in finding that he failed to prove a causal link between his employment and the carpal tunnel syndrome, Barnett relies on the testimony of Drs. Mussarat and Chiasson. In his deposition, Dr. Mussarat was asked whether the carpal tunnel syndrome would be consistent with the type of work that Barnett did. He questioned the type of work Barnett was doing, and was told that Barnett was doing mechanic work and had to load 55-pound bags of chemicals. He then questioned whether Barnett was working most of the time as a mechanic, to which Barnett’s attorney responded “yes.” The doctor responded that carpal tunnel syndrome could result from any type of persistent hand work, and opined that if there was nothing else like a hand injury, h ¿arthritis or other disorder, “it could mean that this type of work can cause carpal tunnel.”
Dr. Chiasson was also asked whether mechanic work can cause carpal tunnel syndrome, to which he answered, “yes.” The doctor was then told that Barnett attested that he spent a significant amount of time using a hand-held spray gun washing down tanks with a 3,000 pound per square inch (“PSI”) stream of water while performing a constant back and forth motion with his hand and a twisting motion. Dr. Chiasson stated that this “could” be a cause of Barnett’s carpal tunnel syndrome, and also stated that from the history Barnett had given him, his employment was a “significant contributing factor” in the development of the carpal tunnel syndrome.
Dr. Joe A. Morgan, an orthopedic surgeon who performed an independent medical examination of Barnett on January 17, 2003, testified that there had been no injury or direct trauma to Barnett’s hands. When asked whether the mechanical work performed by Barnett could have caused his carpal tunnel syndrome, Dr. Morgan replied that the Occupational Safety and Health Administration (“OSHA”) has identified two types of jobs that are associated with carpal tunnel syndrome: meat packers, whose jobs involve heavy torquing, and persons working with vibrating tools on a frequent basis. Otherwise, he stated there were no OSHA studies establishing that carpal tunnel syndrome was caused by work activities. He also opined that most cases of carpal tunnel syndrome develop for no reason at all, while others are associated with other medical conditions. He stated that because Barnett is “on the heavy side,” his weight could have been a contributing factor.
11RWhen asked whether Barnett’s repetitive hand motions while performing tank-washing duties was a cause of his carpal tunnel syndrome, Dr. Morgan testified that he did not know. He explained:
I don’t know how much force is required with that. I don’t know if it’s comparable to what [OSHA] found in the meat packing industry. Repetitive activity alone is thought to have no relationship to the onset of carpal tunnel syndrome. If there is a tremendous amount of force and a tremendous amount of grip there may be. I can’t remember seeing other people in industry with the activities that you described. I can’t remember seeing these people come through here with a history of something like that with carpal tunnel syndrome. So I don’t know what to tell you. I guess it’s possible but that’s about the most I can say about it.
[[Image here]]
Before I could make any firm comment on whether or not he had a rela *664 tionship of the carpal tunnel syndrome to his job I’d want to see a detailed job description. I couldn’t make an assessment of that just on what we’re talking about here.
Ultimately, Dr. Morgan acknowledged that mechanical work involves torquing movements similar to that used by the meat packers.
We find no manifest error in the OWC’s conclusion that the medical evidence failed to establish a causal connection between Barnett’s employment and the carpal tunnel syndrome. None of the doctors were provided with a detailed job description in order to provide a meaningful opinion on the causation issue. Dr. Mussarat was given a scenario wherein it was suggested that Barnett worked most of his time as a mechanic when he opined that Barnett’s work could cause carpal tunnel syndrome. There is, however, no evidence to suggest that Barnett spent a substantial amount of his time doing mechanic work. Furthermore, Dr. Chiasson was presented with a scenario where Barnett used a 3000 PSI pressure washer while performing a constant twisting of his hands. It was not 1 ^established that Barnett used a heavy-duty pressure washer on a regular basis; in fact, his supervisor described the hose used as a regular garden hose with the tip cut off. Neither of the physicians could say, even with the assumptions they were asked to make and which are unsupported in the record, that Barnett’s work, more probably than not, caused the carpal tunnel syndrome. Under these circumstances, the OWC’s decision finding that Barnett faded to prove causation by a preponderance of the evidence was entirely reasonable, and may not be disturbed by this court.[6]
CONCLUSION
For the foregoing reasons, the judgment appealed from is affirmed. All costs of this appeal are assessed to appellant, Brandon Barnett.
AFFIRMED.
KUHN, J., dissents and assigns reasons and concurs in part.

. As of January 2002, Barnett worked at A & R’s warehouse facility in Pearlington, Mississippi. However, the record reveals that he was initially hired in Louisiana to work at A & R’s Baton Rouge, Louisiana facility. Accordingly, we conclude that Barnett was working under a contract of hire made in this state for the purposes of satisfying the jurisdictional requirements of Louisiana Revised Statutes 23:1035.1, addressing extraterritorial coverage. See Lakvold v. Stevens Transport, 95-0866 (La.App. 1st Cir.2/15/95), 665 So.2d 828.

. Barnett's testimony further establishes that the injury occurred when he fell off of a tank while washing it while working for a previous employer.

. Although Barnett complains that A & R reduced his hourly pay by $1.00 following the work-related accident, the record establishes that the reduction in pay was attributable to his work productivity both before and after the work-accident and due to his tardiness in arriving at work.

. Barnett additionally argues that the January 2002 accident caused his carpal tunnel syn *662 drome. There is no evidence in the record to support this assertion, and we decline to address it further.

. A presumption that the disease was not contracted in the course of and arising out of the employment applies when an occupational disease is contracted by an employee while performing work for a particular employer in which the claimant has been engaged for less than twelve months. La. R.S. 23:1031.1 D. The facts establish that Barnett had been performing manual labor tasks for A & R since 1999. A & R does not claim that this presumption applies in the present case.

. Because of our ruling, we pretermit discussion of all other issues raised in this appeal.