889 So.2d 424 (2004)
Vernita THOMAS
v.
ALLIANCE COMPRESSORS.
No. WCA 04-1034.
Court of Appeal of Louisiana, Third Circuit.
December 8, 2004.
*425 George Arthur Flournoy, Flournoy, Doggett & Losavio, Alexandria, LA, for Plaintiff/Appellee, Vernita Thomas.
Mark Alan Watson, Stafford, Stewart, & Potter, Alexandria, LA, for Defendant/Appellant, Alliance Compressors.
Court composed of JOHN D. SAUNDERS, MARC T. AMY, and BILLY HOWARD EZELL, Judges.
EZELL, Judge.
In this workers' compensation case, Alliance Compressors appeals the finding of the workers' compensation judge that Vernita Thomas suffered an occupational disease and appeals the subsequent award of supplemental earnings benefits (SEB), medical expenses, medically-related travel expenses, and penalties and attorney's fees. For the following reasons, we affirm the decision of the workers' compensation judge.
In approximately March, 2001, Vernita Thomas was working on an assembly line for Alliance Compressors. Her work was of a repetitive nature, and she had just been moved to a part of the Alliance plant that required more physically demanding work than she had previously performed. Sometime in that month or early April, she began to experience pain in her left shoulder, neck, and arm, as well as weakness and tremors in her left hand. She told her *426 supervisor, Mike Leatherwood, about the problems, but he never sent her to a doctor or began any workers' compensation file. Mrs. Thomas later presented to the emergency room complaining of the above symptoms. She was eventually diagnosed as having cervical radiculopathy. Her doctors believed this condition was work-related. She later filed this disputed workers' compensation claim, seeking medical expenses and SEB.
At trial, the workers' compensation judge ruled that Mrs. Thomas had not suffered an accident, but had developed an occupational disease. He awarded SEB, medical expenses, medically related travel expenses, and penalties and attorney's fees. From this decision, Alliance appeals. Mrs. Thomas answers, claiming that the workers' compensation judge erred in finding she had not suffered an accident, and seeking additional attorney's fees for work done on appeal.
Alliance asserts four assignments of error on appeal. It claims the workers' compensation judge erred in finding that Mrs. Thomas suffered an occupational disease, that he erred in awarding her SEB and medical expenses based on that finding, that the workers' compensation judge erred in awarding Mrs. Thomas penalties and attorney's fees, and finally, that the workers' compensation judge erred in excluding an ergonomics report created by one of its witnesses.
In Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, pp. 7-8 (La.7/1/97), 696 So.2d 551, 556 (alteration in original), the supreme court set forth the standard of review for factual findings in workers' compensation matters:
Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of review. Smith v. Louisiana Dep't of Corrections, 93-1305, p. 4 (La.2/28/94), 633 So.2d 129, 132; Freeman v. Poulan/Weed Eater, 93-1530, pp. 4-5 (La.1/14/94), 630 So.2d 733, 737-38. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Freeman, 93-1530 at p. 5, 630 So.2d at 737-38; Stobart v. State, 617 So.2d 880, 882 (La.1993); Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 882. Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La.1990).
Generally, an injured employee is entitled to receive benefits for an injury that arises out of and in the course of his employment. La. R.S. 23:1031. Specifically, La. R.S. 23:1031.1 governs workers' compensation claims for occupational disease. An occupational disease means "only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease." La.R.S. 23:1031.1(B). As noted in Dunaway v. Lakeview Regional Medical Center, 02-2313, p. 5 (La.App. 1 Cir. 8/6/03), 859 So.2d 131, 134-35:
Prior to the legislative extension of workers' compensation coverage to include occupational diseases, a worker's entitlement to compensation hinged on the occurrence of an "accident," which *427 can only be established by the heightened burden of proof by the claimant of an "identifiable precipitous event" that caused injury. See O'Regan v. Preferred Enterprises, Inc., 98-1602, pp. 10-13 (La.3/17/00), 758 So.2d 124, 132-33. While enlarging workers' compensation coverage to cases of occupational disease, La. R.S. 23:1031.1 retains the requirement that an employee establish the disease arises from his work, i.e., from "causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease." See Coats v. American Telegraph Company, 95-2670, p. 7 (La.10/25/96), 681 So.2d 1243, 1247. Thus, the claimant must show that he contracted the disease at issue during the course of his employment and that the disease was the result of the nature of the work performed. Vargas v. Daniell Battery Manufacturing Company, 93-1249, pp. 7-8 (La.App. 1 Cir. 5/20/94), 636 So.2d 1194, 1197. The causal link between a claimant's illness and his work-related duties must be established by a reasonable probability; the claimant fails in his burden of proof upon a showing of only a possibility that the employment caused the disease or that other causes not related to the employment are just as likely to have caused the disease. Comeaux v. Star Enterprise/Motiva Enterprise, XXXX-XXXX, p. 8 (La.App. 1 Cir. 12/20/02), 836 So.2d 359, 364.
Alliance asserts as its first assignment of error that the workers' compensation judge erred in finding that Mrs. Thomas suffered an occupational disease when her diagnosis was cervical radiculopathy, and that the evidence failed to establish that the injury was linked to her trade. Alliance notes that La. R.S. 23:1031.1 states that: "[d]egenerative disc disease, spinal stenosis, arthritis of any type, mental illness, and heart-related or perivascular disease are specifically excluded from the classification of an occupational disease for the purpose of this Section." While degenerative disc disease and spinal stenosis are often causes of cervical radiculopathy, there is no evidence in the record to indicate that Mrs. Thomas suffered from either of these ailments. In fact, her medical records indicate that a MRI performed on her was clear of any such problems. Thus, Alliance's claim that Mrs. Thomas' cervical radiculopathy is excluded under the statute is not supported by the record.
Alliance also claims that the record was devoid of any evidence Mrs. Thomas' condition was peculiar to her trade, claiming that the workers' compensation judge incorrectly held that expert testimony is not required for the finding of an occupational disease. Alliance cites Price v. City of New Orleans, 95-1851, p. 6 (La.App. 4 Cir. 3/27/96), 672 So.2d 1045, 1049 writ denied, 96-1016 (La.10/25/96), 681 So.2d 360, for the premise that: "[n]o court would find an `occupational disease' solely on the basis of lay testimony." However, the Louisiana Supreme Court in Fite v. Louisiana Title Company, 02-2607, p. 2 (La.6/27/03), 852 So.2d 983, 984, noted that live expert testimony is not required to support a finding of an occupational disease, and that "[e]xpert testimony may be admitted by ... reports of any health care provider certified as a true copy...." Mrs. Thomas' medical records are consistent in noting that her discomfort is most likely work-related. Furthermore, Dr. Paul Gerstenberg indicates in several of his records, and in a note to Alliance asking that Mrs. Thomas' work responsibilities be modified to help her condition, that her problems were specifically work-related.
*428 While the evidence concerning the relationship between Mrs. Thomas' condition and the performance of her job is minimal at best, there is enough evidence that the workers' compensation judge believed that Mrs. Thomas had established the causal link between the claimant's illness and her work-related duties by a reasonable probability. These findings are reasonable in light of the record reviewed in its entirety, and therefore, a court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Accordingly, there is no manifest error in the workers' compensation judge's finding that Mrs. Thomas suffered an occupational disease. This assignment of error is without merit.
Alliance next claims that the workers' compensation judge erred in finding that Mrs. Thomas was entitled to SEB, medical expenses, and medically-related travel expenses, as she failed to prove she suffered an occupational disease. Based on our above finding that Mrs. Thomas did, in fact, prove the existence of her occupational disease, this assignment of error is also without merit.
Alliance's third assignment of error claims that the workers' compensation judge erred in finding them arbitrary and capricious in refusing to pay disability benefits and in assessing them with penalties and attorney's fees as a result. We disagree. The determination of whether an employer should be cast with penalties and attorney fees is essentially a question of fact, and the trial court's finding must not be disturbed on appeal absent manifest error. Wiltz v. Baudin's Sausage Kitchen, 99-930 (La.App. 3 Cir. 6/19/00), 763 So.2d 111, writ denied, 00-2172 (La.10/13/00), 771 So.2d 650. "To avoid penalties and attorneys fees for the nonpayment of benefits, the employer or insurer is under a continuing duty to investigate, to assemble, and to assess factual information before denying benefits." George v. Guillory, 00-591, p. 13 (La.App. 3 Cir. 11/2/00), 776 So.2d 1200, 1209.
It is clear from the record that Alliance did no investigation whatsoever into Mrs. Thomas' injury. When Mrs. Thomas started to notice the pain in her hand and arm, she immediately told Mike Leatherwood, her team leader. She testified, as did Cynthia Prelow, a witness to the conversation, that Mr. Leatherwood simply told her that "it would be alright." No further action was taken by anyone at Alliance. On May 16, 2001, Mrs. Thomas presented Alliance with a doctor's slip asking that her work be modified due to a work-related injury, still no action was taken. Finally, as noted in a memo by Vicky Wilson, Mrs. Thomas had tried to fill out Family and Medical Leave Act paperwork, but her doctor refused, noting that the injury was work-related. The memo also states that Mrs. Thomas was told to talk to Jeff Risinger, who told her that "the doctor could not make that type of determination" and that "as far as Alliance Compressors was concerned, this is not work related so the doctor needs to prove it."
It is clear from the record that Alliance had knowledge that Mrs. Thomas sustained an injury. Alliance had the records of Dr. Krzysztof Kundo, one of Mrs. Thomas' doctors, indicating that her history of repetitive activity and heavy work were consistent with cervical radiculopathy. They also had written notice from Dr. Gerstenberg that she had a work related injury. However, they never sent her to any other physician to determine if a causal relationship existed, or to refute the determinations of Drs. Gerstenberg and Kundo. Furthermore, Alliance refused to authorize treatment sought by another one *429 of her doctors, Dr. Moses, who told them she wanted to send Mrs. Thomas to an occupational medicine clinic. Alliance failed to meet its duty to investigate Mrs. Thomas' claim, and accordingly, there was no manifest error in the awarding of penalties and attorney's fees.
Finally, Alliance claims that the workers' compensation judge erred in failing to admit into evidence an ergonomics report prepared by Rusty Boller. Alliance failed to list the report as an exhibit or give Mrs. Thomas notice of the report until the day of trial. In fact, Alliance had some of Mrs. Thomas' medical reports excluded for the same reason. "The decision to admit evidence into the record rests within the sound discretion of the workers' compensation judge and will not be reversed in the absence of manifest error." Jones v. Trendsetter Prod. Co., Inc., 97-299, p. 11 (La.App. 3 Cir. 2/25/98), 707 So.2d 1341, 1346, writ denied, 98-793 (La.5/15/98), 719 So.2d 463. After reviewing the record as a whole, we do not find any error on the part of the workers' compensation judge in disallowing the proffered evidence.
Finally, Mrs. Thomas answers Alliance's appeal, claiming that the workers' compensation judge erred in finding that Mrs. Thomas failed to establish the occurrence of an "accident." She also seeks an increase in attorney's fees for work necessitated by this appeal. The testimony in the record is clear that Mrs. Thomas was unable to identify any specific event which led to the development of pain in her arm and shoulder. The record supports the workers' compensation judge's finding that she did not suffer an "accident." This claim is without merit. However, we award Mrs. Thomas an additional $2,500 in attorney's fees for work done on this appeal.
For the above reason, the decision of the workers' compensation judge is amended to increase the award of attorney's fees by $2,500.00. In all other respects the decision is affirmed. Costs of this appeal are assessed against Alliance Compressors.
AFFIRMED AS AMENDED.
SAUNDERS, J., concurs in the result.
AMY, J. concurs in part and dissents in part and assigns written reasons.
SAUNDERS, J., concurring.
This is a workers' compensation case in which plaintiff, after being diagnosed with cervical radiculopathy, sought benefits from her employer. Shortly before the onset of symptoms. Mrs. Thomas' job duties changed becoming more physically demanding. Soon after assuming these new duties, she began to experience pain in her left shoulder, neck, and arm along with tremors in her left hand. Also, as witnessed by a co-worker, her left arm suddenly cramped up causing her fingers to involuntarily spread out. The WCJ found that no accident occurred but did find an occupational disease and awarded SEB benefits, medical expenses, medically related travel expenses and penalties and attorney's fees.
While the issue of whether a work related accident occurred is rendered moot by the majority opinion, I believe Mrs. Thomas carried her burden of establishing a work related accident. This court has affirmed findings of an accident when employees suffered an injury that objectively manifested itself while performing routine duties. I believe that is the case here. Mrs. Thomas suddenly experienced cramping in her left hand accompanied by the involuntary spreading of her fingers. This incident occurred shortly after she began performing more strenuous duties at work and was corroborated by a co-worker. Given that this injury arose so soon after *430 her job duties were changed and was witnessed by a co-worker, I believe she met her burden of identifying an event marked by the objective manifestation of an injury.
AMY, J., concurring in part, dissenting in part.
I concur in that portion of the majority opinion affirming the workers' compensation judge's determination to exclude from evidence the ergonomics report prepared by the employer's witness. However, I respectfully dissent from the remainder of the majority opinion. In my opinion, the evidence as to causation presented by the plaintiff is insufficient to meet La.R.S. 23:1031.1(B)'s requirement that the disease/illness allegedly compensable as an occupational disease is "due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease." Due to the record's lack of evidentiary proof in this regard, I would reverse the trial court's finding of an occupational disease.