STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

05-1186

LINDA MITCHELL

VERSUS

ALLIANCE COMPRESSORS

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 2
PARISH OF RAPIDES, NO.  02-07611
HONORABLE JAMES L. BRADDOCK
WORKERS' COMPENSATION JUDGE

**********

**J. DAVID PAINTER**
**JUDGE**

**********

Court composed of Marc T. Amy, Elizabeth A. Pickett, and J. David Painter, Judges.

**AFFIRMED.**

Amy, J., dissents.

**George A. Flournoy**
**Flournoy & Doggett (APLC)**
**P.O. Box 1270**
**Alexandria, LA 71309**
**Counsel for Plaintiff-Appellee:**
      **Linda Mitchell**

**Mark A. Watson**
**Todd A. Vance**
**Stafford, Stewart & Potter**
**P.O. Box 1711**
**Alexandria, LA 71309**
**Counsel for Defendant-Appellant:**
      **Alliance Compressors**

**PAINTER, Judge.**

In this workers' compensation case, Defendant, Alliance Compressors, appeals the finding of the workers' compensation judge (WCJ) that Plaintiff, Linda Mitchell, suffered an occupational disease. Alliance Compressors further appeals the WCJ's subsequent awards of supplemental earnings benefits (SEB), medical benefits, vocational rehabilitation, and penalties and attorney's fees. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Mitchell began work at Alliance Compressors in August 1999 as an assembly worker in the kitting department. In May of 2001, Mitchell injured her left shoulder at work and was treated by Dr. John P. Sandifer and Dr. Baer Rambach. Dr. Rambach released her to return to work in September 2002, and she returned to work at Alliance in the sub-assembly department.

In April 2003, Mitchell was assigned to the scroll department. In that department, she worked as an op-10 operator. In that capacity, Mitchell was required to gather the parts as they came down a conveyor belt in a basket holding twelve parts and to manually lift them into a machine. The parts are called scrolls and weigh about eight to twelve pounds each. Mitchell testified that the machine was about shoulder height for her. When the scrolls exited the machine, Mitchell had to spray them off and carry them to a different room. Once the parts were brought back from the other room, Mitchell had to put them back into the basket and push them back out on the line so that they could go to the next area. This work was of a repetitive nature. Mitchell's job duties in the scroll department also involved "tooling" her machine which entailed changing out damaged tools in the machine using tools that weighed up to seven pounds. Mitchell was also required to clean the machine several

1

times a day and to sweep around her area. Mitchell's normal shift was from 6:00 a.m. to 6:00 p.m. on Friday, Saturday, and Sunday.

After being in the scroll department for several months, Mitchell began experiencing problems in her upper back and shoulders. On January 28, 2004, she returned to Dr. Sandifer. He prescribed Bextra and told Mitchell she could return to work. She did return to work, but testified that she was still in pain. On February 28, 2004, Mitchell felt shooting pains from the upper-center part of her back, through both of her shoulders and neck. At that time, she reported the injury, filled out an incident report, and went to the hospital.

Alliance Compressors set up an appointment for Mitchell with Dr. Mary Long on March 2, 2004. Dr. Long diagnosed back pain and prescribed a muscle relaxant and analgesics. Dr. Long also recommended a physical therapy consult. Mitchell saw Dr. Long on March 4 and March 5, 2004. Dr. Long ordered an MRI and x-ray of the thoracic spine. These studies were done on March 9, 2004.

Mitchell's last day of work at Alliance was March 5, 2004. By letter dated March 15, 2004, Mitchell was fired by Alliance.

Mitchell saw Dr. M. E. Milstead on May 3, 2004 and continued under his care through the trial of this matter. Dr. Milstead diagnosed Thoracic Outlet Syndrome (TOS) and recommended physical therapy. Thoracic Outlet Syndrome is a condition where the blood vessels and/or nerve bundles coming out of the neck and underneath the collarbone are compressed or irritated. Dr. Milstead also ordered an EMG and MRIs. The EMG studies were done on May 17, 2004 by Dr. David Adams and were normal. There was no evidence of radiculopathy, neuropathy, myopathy, or any nerve injury or damage. The MRIs of the cervical spine and both shoulders were performed on May 20, 2004 and were normal. She also had negative Tinel's and

2

Adson's tests. However, Dr. Milstead was firm in his diagnosis of TOS. His progress report, dated May 24, 2004, indicated his opinion that her symptoms were related to the thoracic outlet since all of the work-up looking for disc problems was negative. On March 3, 2005, Dr. Milstead's exam did show a strong positive Tinel's sign over both supraclavicular regions with positive Adson's tests on both sides.

On February 1, 2005, Mitchell filed a first supplemental and amending claim, asserting that she was disabled as of March 1, 2004, as a result of "an occupational disease and/or repetitive work duties in her work environment[.]"

Following trial of this matter, the WCJ rendered judgment in favor of Mitchell, finding that her wages were $504.70 per week; that she was entitled to SEB based on zero earnings, beginning March 6, 2004 and continuing in accordance with La.R.S. 23:1221(3), together with legal interest from due date; and that Alliance Compressors was responsible for payment of all work related medical expenses incurred prior to April 15, 2005 in the full amount of each expense, without any reduction, together with legal interest from due date. The judgment also ordered Alliance Compressors to pay $4,000.00 in penalties for failure to pay indemnity and medical benefits, to provide meaningful vocational rehabilitation, and to pay attorney's fees in the amount of $7,500.00.

Alliance Compressors now appeals and asserts three assignments of error. First, Alliance Compressors urges that the WCJ erred in finding that Mitchell established that she sustained an occupation disease because Mitchell did not introduce any evidence that her condition was characteristic of and peculiar to her trade, business or occupation. Second, Alliance Compressors argues that the WCJ erred in finding that Mitchell was entitled to SEB, medical benefits, and vocational rehabilitation. Third, Alliance Compressors asserts that the WCJ erred in finding that

3

it did not reasonably controvert Mitchell's claim such that the awards of penalties and attorney's fees were improper.

## DISCUSSION

At the outset, we are mindful that the standard of review for factual findings in a workers' compensation case is the manifest error or clearly wrong standard of review. *Thomas v. Alliance Compressors*, 04-1034 (La.App. 3 Cir. 12/8/04), 889 So.2d 424, *writ denied*, 05-0086 (La. 3/18/05), 896 So.2d 1010 (citing *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840, p. 7 (La. 7/1/97), 696 So.2d 551, 556). Thus, it is not for us to determine whether the trier of fact was right or wrong, but whether the conclusion was a reasonable one. *Id.* Therefore, if the conclusions of the factfinder are reasonable in light of the record reviewed in its entirety, we cannot reverse, even if we are convinced that we would have weighed the evidence differently. *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106 (La.1990).

Louisiana Revised Statutes 23:1031.1(B) governs workers' compensation claims for occupational disease and provides, in pertinent part, as follows:

> An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease. Occupational disease shall include injuries due to work-related carpal tunnel syndrome. Degenerative disc disease, spinal stenosis, arthritis of any type, mental illness, and heart-related or perivascular disease are specifically excluded from the classification of an occupational disease for the purpose of this Section.

A plaintiff bears the burden of proving, by a preponderance of the evidence, that the disease at issue was contracted during the course of her employment and that the disease was the result of the nature of the work performed. *Thomas*, 889 So.2d 424 (citing *Dunaway v. Lakeview Regional Med. Ctr.*, 02-2313, p. 5 (La.App. 1 Cir. 8/6/03), 859 So.2d 131, 134). In *Comeaux v. Star Enterprise/Motiva Enterprise*, 02-

4

24, p.8 (La.App. 1 Cir. 12/20/02), 836 So.2d 359, 364 (citations omitted), the court stated:

> The causal link between his illness and work-related duties must be established by a reasonable probability. The claimant will fail if he shows only a possibility that the employment caused the disease, or that other causes not related to the employment are just as likely to have caused the disease.

We are further mindful that, "[i]n Louisiana, it is well settled that an employee's disability is compensable if a pre-existing condition or disease is activated or precipitated into a disabling manifestation as a result of work." *Austin v. Howard Discount Stores, Inc.*, 569 So.2d 659, 654 (La. App. 2 Cir. 1990) (citing *Hammond v. Fidelity & Casualty Co. of New York*, 419 So.2d 829 (La.1982) and *Duncan v. State, DOTD*, 556 So.2d 881 (La.App. 2d Cir.1990)).

In this case, Alliance argues that there was no evidence to show that TOS is characteristic of or peculiar to Mitchell's trade or occupation and makes much of Dr. Milstead's testimony that TOS is common, specifically in females, and in overhead activities such as fixing hair and applying make-up. Alliance also argues that the TOS manifested itself less than twelve months into Mitchell's work in the scroll department such that it is presumed that the TOS was not caused by her job duties. We find these arguments to be without merit.

We first consider Alliance's argument that it is presumed that the TOS was not caused by Mitchell's job duties because it manifested itself in December of 2003, less than twelve months after Mitchell was transferred to the scroll department in April of 2003. This presumption, however, is rebuttable and can be overcome if a claimant can prove "by a preponderance of the evidence that the disease was contracted during her employment, specifically proving that there is a disability which is related to an employment-related disease, the disease was contracted during the course of

5

employment, and the disease is a result of the work performed." *Johnson v. Johnson Controls, Inc.*, 38,495, p. 12 (La.App. 2 Cir. 5/12/04), 873 So.2d 923, 931-32 (citing *Ball v. Wendy's Intern. Inc.*, 36,922 (La.App. 2d Cir.03/05/03), 839 So.2d 1208, *writ denied*, 03-0978 (La.05/30/03), 845 So.2d 1056). The WCJ can consider medical reports admitted into evidence or expert testimony to determine whether a claimant has overcome the presumption. *Id.* (citing *Fite v. Louisiana Title Co.*, 02-2607 (La.06/27/03), 852 So.2d 983).

Here, the WCJ made no mention of the presumption stated in La. R.S. 23:1031.1(D). However, the record shows that Mitchell's symptoms manifested themselves well within the initial twelve month period of her employment in the scroll department. With this presumption in place, Mitchell had to prove by a preponderance of the evidence that her TOS was contracted during her employment. Based on the medical records introduced into evidence and the deposition testimony of Dr. Milstead, the WCJ concluded that Mitchell had TOS and that it was made symptomatic by her employment at Alliance. Even though the WCJ may not have considered the presumption in favor of Alliance, we cannot say that the final determination on this particular issue was in error because we find no manifest error in the WCJ's conclusion that Mitchell suffered from TOS and that Mitchell carried her burden of proving that her employment aggravated that condition.

This circuit has repeatedly recognized that TOS "is akin to carpal tunnel syndrome and is included as an occupational disease under La.R.S. 23:1031.1." *Doumite v. KVHP-Fox 29*, 04-427, pp. 6-7 (La.App. 3 Cir. 10/20/04), 884 So.2d 1283, 1288. The record in this case indicates that Mitchell gradually began experiencing pain in her upper back and shoulder while working in the scroll department at Alliance, where her duties included repetitive lifting and pulling of

6

parts. She was examined by several doctors before being diagnosed with TOS by Dr. Milstead in May of 2004. Dr. Milstead was unequivocal in his testimony that the work Mitchell was doing definitely aggravated the thoracic outlet and brought on the symptoms of TOS. There was absolutely no evidence that her condition was anything other than TOS. Based on our review of the record in its entirety, we find that there is enough evidence to find that Mitchell established a causal link between her illness and her work-related duties by a reasonable probability. Therefore, we find no manifest error in the WCJ's finding that Mitchell suffered from a compensable occupational disease and that she met her burden of proving that her employment caused the symptoms of TOS to manifest themselves.

Alliance next argues that the WCJ erred in finding that Mitchell was entitled to SEB, medical expenses, and vocational rehabilitation. This argument is based on Alliance's position that Mitchell failed to prove that she suffered an occupational disease. Alliance apparently does not contest the award at a zero rate beginning March 6, 2004, but contests the fact that it was awarded at all. Since we find that Mitchell did prove that she suffered from an occupational disease and that it was related to her work duties, this assignment of error is without merit. And, we note, as did the WCJ, that Alliance did not show that it had jobs available or offered any position to Mitchell that she could perform, what the jobs paid, or that Mitchell refused said jobs. Further, Alliance offered no vocational rehabilitation to assist Mitchell in returning to work.

Finally, in its third assignment of error, Alliance argues that the WCJ erred in finding that it did not reasonably controvert this claim and in awarding penalties and attorney's fees as a result thereof. We disagree. "The determination of whether an employer should be cast with penalties and attorney fees is essentially a question of

7

fact, and the trial court's finding must not be disturbed on appeal absent manifest error." *Thomas*, 889 So.2d at 428. The employer has a continuing duty to investigate, assemble, and assess factual information before it denies benefits. *Id.* (citing *George v. Guillory*, 00-591(La.App. 3 Cir. 11/2/00), 776 So.2d 1200). It is this court's duty to "ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed." *Doumite*, 884 So.2d at 1291 (quoting *Brown v. Texas-LA Cartage, Inc.*, 98-1063, p. 9 (La. 12/1/98), 721 So.2d 885, 890).

Alliance refused to pay benefits based on its assertion that there was no accident and that there was no proof of an occupational disease. Here, as in *Thomas*, it is clear that Alliance had knowledge that Mitchell sustained an injury. Alliance sent Mitchell to Dr. Long, who recommended a physical therapy consult on March 2, 2004. No such consult was ever approved by Alliance. Alliance did receive copies of Dr. Milstead's reports. Even after Dr. Milstead diagnosed TOS, Alliance never inquired as to what disability status Dr. Milstead placed on Mitchell or what work restrictions he placed upon her. Nor did Alliance send Mitchell back to Dr. Long or another doctor to determine if a causal relationship existed or to refute Dr. Milstead's diagnosis. Therefore, we find that Alliance failed to meet its duty to investigate Mitchell's claim. Accordingly, we find no manifest error in the WCJ's conclusion that Alliance failed to reasonably controvert Mitchell's claim for benefits and his award of penalties and attorney's fees in this matter.

Mitchell does not ask for additional attorney's fees for work done on the present appeal, and no answer has been filed requesting such relief. Therefore, we are precluded from awarding any additional attorney's fees.

## DECREE

For all of the aforementioned reasons, the judgment of the WCJ is affirmed in its entirety. Costs of this appeal are assessed to Defendant-Appellant, Alliance Compressors.

**AFFIRMED.**