# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 07-59


**JAMES B. DOYLE, JR.**

**VERSUS**

**PEPSI BOTTLING GROUP, INC.**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 04-07109
CHARLOTTE A. L. BUSHNELL, WORKERS' COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***

**MARC T. AMY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Michael G. Sullivan, Judges.

**AFFIRMED.**

**Eric J. Waltner**
**Allen & Gooch**
**Post Office Drawer 3768**
**Lafayette, LA   70502-3768**
**(337) 291-1400**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Pepsi Bottling Group, Inc.**

**Claude P. Devall**
**Cox, Cox, Filo, Camel & Wilson**
**723 Broad Street**
**Lake Charles, LA   70601**
**(337) 436-6611**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**James B. Doyle, Jr.**

AMY, Judge.

In this workers' compensation dispute, the claimant-employee alleges that he was injured while in the course and scope of his employment with the defendant company. The defendant denied his claim, alleging that his injury was not work-related. The claimant subsequently filed a disputed claim for compensation, asserting that the defendant did not authorize medical treatment and that wage benefits were not paid. He sought penalties and attorney's fees. Following a trial, the workers' compensation judge found that the claimant proved that his accident was work-related and that he was entitled to workers' compensation benefits. The defendant was assessed with penalties and attorney's fees. The defendant appeals. For the following reasons, we affirm.

**Factual and Procedural Background**

The record indicates that the claimant, James B. Doyle, Jr. (Doyle), began working for the defendant, Pepsi Bottling Group (Pepsi), on March 1, 2004 as a merchandiser. Doyle explained that his job required him to go "from store to store and fill[] up displays and shelves" with 300 to 600 cases of water and soda per night. When asked to describe what happened on the day of his injury, Doyle testified:

> I started work on Thursday evening at five p.m.; I'm not sure of the date. I did my normal routine, which was going to the Wal-Mart in Lake Charles, Sulphur, Crowley, Jennings; and my job, as I described, was to make the store look presentable to the customers who come in in the morning because at nighttime there's not a lot of customers. . . . Towards the end of my shift -- and in the Wal-Mart in Jennings, I was doing my -- my job duties, which was filling up coolers, filling up the displays, moving cases in the back, in the back room. . . . So, that night I had -- I had done what I had always been doing, and by the end of my shift I had noticed some discomfort in my neck and -- but I went home. It was time for me to be off. It was around 12:30, 1:30.

Upon further questioning, Doyle stated that around 12:30 Friday morning (July 23, 2004), he was bending over working on a display when he felt discomfort in his

neck, which he described as a "crick." Since it was the end of his shift, Doyle went home, "took a bath and went to bed and woke up Friday. The pain was there but it felt like . . . a muscle strain or a crick, like sleeping wrong." According to Doyle, the pain was tolerable, and he went to work at five that evening. He explained that the pain became gradually worse in that "the muscles in [his] neck and shoulder began to tighten, and it was harder to . . . lift product." Doyle testified that "[w]hen [he] got home, [he] soaked in a bath that night, and [he] woke up Saturday and [he] could not . . . lift [his] arm past [his] hip."

According to Doyle, Pepsi's policy required employees to immediately report an on-the-job accident to their immediate supervisor and to call 1-800 JOB-HURT. Nevertheless, he stated that it was not until Saturday morning (July 24, 2004) that he telephoned his immediate supervisor, Trey Smith[1] (Smith), and informed him that at the end of his Thursday night shift, he noticed pain in his neck. He told Smith that he went to work the next day, that the pain had increased, and that on Saturday morning, he could not lift his arm. Doyle stated that Smith advised him to see a doctor, which he did that very day.

When asked to list in chronological order all the medical providers he has visited for the treatment of his injury, Doyle responded:

> I first saw Dr. DiGiglia at Urgent Care. He referred me to St. Pat's emergency room, and I was seen by a nurse practitioner but I can't remember the name. I was then sent by Pepsi to go see Business Health Partners and he -- they couldn't figure out what was wrong but something was wrong is what he said, and he said, "I don't have the specialty to figure it out." So, he referred me to Dr. Hinton at the Orthopedic Center[.]
>
> . . . .

---

[1] Doyle's immediate supervisor, Cleo T. Smith, testified that at work, he is known as "Trey."

2

Dr. Hinton couldn't -- didn't know what was wrong. He referred me to a neurologist, Dr. Odenheimer, and Dr. Odenheimer realized -- or figured out through an M.R.I. that there were some problems with my disk in my neck and he referred me to Dr. Bernauer[, who recommended surgery.]

Doyle testified that on Monday, July 26, 2004, he informed Pamela Lafosse (Lafosse), the unit sales manager for Pepsi, of his accident. According to Doyle, Lafosse asked him if he had called 1-800 JOB-HURT and when he answered negatively, she told him that he could not call the number. Doyle maintained that Lafosse did not give him a specific reason why he could not report the accident. Nevertheless, he testified that later that night, he called the number and explained the circumstances surrounding his injury. The record indicates that the person Doyle spoke to filled out a form entitled: "Employer Report of Injury/Illness." According to Doyle, there was a mistake on the employer report in that there is nothing written in response to the question: "What work actually was the employee doing when the injury occurred?"

According to the file of the adjuster handling Doyle's claim, Thorla Renwick (Renwick), she notified him on July 30, 2004 that his claim was denied "as there was no injury in the course and scope of his employment." Doyle subsequently filed a disputed claim for compensation, seeking workers' compensation benefits, penalties, and attorney's fees. Following a trial, the workers' compensation judge determined that Doyle was injured in the course and scope of his employment and that he was entitled to workers' compensation benefits. The workers' compensation judge ordered Pepsi to pay penalties and attorney's fees. It is from this ruling that Pepsi appeals, designating the following as error:

3

I. The Workers' Compensation Judge committed legal error or in the alternative, manifest error in holding that the claimant satisfied his burden of establishing a compensable accident; and

[II.] The Workers' Compensation Judge committed legal error or, in the alternative, manifest error in awarding penalties and attorney fees.

**Discussion**

*Work-Related Accident*

Pepsi argues that Doyle did not prove by a preponderance of the evidence that he was injured in the course and scope of his employment. It points out Doyle did not immediately report the accident, and when he did notify Smith and Lafosse of his injury, he stated that he did not know how he injured himself. Pepsi also references Doyle's statement to Renwick in which he asserted that the date of his injury was "debatable" because he "can't really remember a specific accident happening."

Additionally, Pepsi contends that when seeking medical treatment, Doyle did not always state that his injury was caused by a work-related accident. Specifically, Pepsi asserts that when Doyle presented at Urgent Care, he told the staff that he did not know what "went wrong" with his shoulder or "what [he] did to it." He billed his private insurance for that visit. Furthermore, Pepsi emphasizes that the intake documents at Business Health Partners contained "a question mark in the query which asked whether he was present for a work related injury and a 'N/A' in the blank asking for the date of the injury."

To recover workers' compensation benefits, the claimant must, by a preponderance of the evidence, establish that a work-related accident caused his injuries. *Hebert v. C.G. Logan Constr. Co.*, 06-612 (La.App. 3 Cir. 11/2/06), 942 So.2d 77. "A worker's testimony alone may be sufficient to discharge this burden of

4

proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident." *Bruno v. Harbert Int'l, Inc.*, 593 So.2d 357, 361 (La. 1992). "Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses or friends. Corroboration may also be provided by medical evidence." *Id.* (citations omitted). The workers' compensation judge's factual determinations are reviewed under the manifest error standard of review. *Id.*

In her oral ruling, the workers' compensation judge explained:

Based on the Bruno case, the court finds that no other evidence discredits or casts serious doubt on Mr. Doyle's version of the incident. Mr. Doyle has established that the workplace incident was the most reasonable explanation for his injury and resulting disability. The claimant has established, by a preponderance of the evidence, that the injuries to his neck and shoulder were caused while he moved and arranged cases of Pepsi products to set up a display at the Wal-Mart store in Jennings. The Court finds that while there are inconsistencies in the testimony between the claimant and the Pepsi personnel, claimant's recorded statement is not inconsistent with claimant's version of events. Claimant testified he did not initially file with the medical providers as a compensation claim, because he wasn't sure what happened. He testified that before arriving at Wal-Mart in Jennings, he didn't feel the pain but at the end of his shift when he left the store, he felt the pain.

Clearly, there are two permissible views of the evidence regarding whether claimant was injured at work or not. The positions are dramatically different. Claimant initially paused about how he hurt himself, because he wasn't real sure what happened. He testified though that he was okay before his shift and that afterward he was in some pain. Defendants [sic] do not believe an accident occurred. However, the record supports the conclusion that claimant injured himself during the course and scope of [his] employment with Pepsi. His medical records, both from Business Health Partners and Bernauer Clinic, sufficiently corroborate that he suffered an injury to his neck and shoulder area. There was testimony speculating that claimant could have injured himself while lifting his daughters or while doing yoga. But to say that because claimant did not report the accident, there was no accident is far reaching. There is no question that shortly after the alleged incident,

5

claimant sought medical treatment from Business Health Partners. The physician at Business Health Partners identified a problem and even took claimant off work. In addition, claimant's treating physician disabled him.

After reviewing the record, we find that it supports a determination that Doyle proved, by a preponderance of the evidence, that his accident occurred in the course and scope of his employment with Pepsi. Doyle testified that at the end of his Thursday night/Friday morning shift, he noticed some discomfort in his neck. He finished his shift and the next morning, there was a "crick" in his neck. Doyle testified that because the pain was not severe, he went to work Friday evening, but his neck and shoulder muscles began to tighten, making it harder for him to perform his work duties. Doyle stated that when he awoke on Saturday morning, he could not lift his arm past his hip.

According to Doyle, he did not immediately report the accident because "I regarded the muscle strain in my neck as tolerable [and] I still wanted to do my job. I thought it was a strain so I didn't consider it an injury. When I noticed that my arm would not lift, at that point, I knew something was askew, something was not correct." According to Smith, although Doyle stated that his shoulder was hurting and that he could not lift his arm, he never asserted that this was a work-related injury. Rather Doyle relayed that he did not know what happened and reasoned that he may have "slept on it wrong[.]" Smith maintained that he specifically asked Doyle if he had hurt himself at work and that Doyle did not indicate such. He testified that he advised Doyle to see a doctor and told him not to come "back to work until we find out what is wrong with you[.]"

According to Urgent Care records, Doyle presented at their facility on Saturday, July 24, 2004, stating that his left shoulder was "locked up" and that he

6

could not move it. According to a statement given to Renwick[2], the adjuster, Doyle admitted that he did not tell the staff at Urgent Care that this was a work-related injury. Rather he "told them [he] didn't know exactly again what went wrong, what [he] did, what [he] did to it." Following an examination, Dr. John Digligia hypothesized that Doyle's shoulder was dislocated and sent him to St. Patrick's emergency room to have x-rays taken that day.

According to St. Patrick's records, Doyle complained of left shoulder pain and stated that he was "lifting coke boxes @ [at] work." Furthermore, on an assessment sheet, under a section entitled: "Initial Triage Infor[mation,]" it states that "[patient] reports Thurs. night noticed sharp pain to l[e]ft shoulder[,] states that he works for [P]epsi & has to lift in odd ways. [W]ent to [U]rgent [C]are clinic & was sent here for poss[ible] dislocation of shoulder. [Patient] states l[e]ft shoulder is locked up on him." The assessment sheet also reveals that Doyle stated that the pain had persisted for two days. X-rays of Doyle's shoulder came back normal. Upon his discharge from the hospital, Doyle was advised to take anti-inflammatory medication, apply ice to his shoulders four times a day, and follow up with an orthopedic physician in two days.

On Monday, July 26, 2004, Doyle met with Lafosse to discuss his accident. Lafosse corroborated Smith's testimony that Doyle denied that his injury was work-related. According to Lafosse, Doyle relayed to her that he did not know how he injured his arm and that he may have slept on it wrong or that he could have injured it while lifting his daughters or doing yoga.[3] She stated that she filled out a Workers'

---

[2] This statement was not entered into evidence.

[3] We note that although he previously denied it, Doyle admitted to telling his family doctor that he did yoga on July 16, 2004, approximately a week before the accident.

Compensation Accident Investigation Report and based on Doyle's statements, she listed the immediate causes of his injury as "Slept Wrong-Lifting twins-Yoga." She testified that it was not until approximately a week and a half later that Doyle changed his story and stated that he was, in fact, injured on-the-job.

According to Doyle, on July 27, 2004, Pepsi sent him to Business Health Partners. On the Patient Authorization Form, one of the questions was: "Are you here for a work-related injury?" In the blank for "YES" and the blank for "NO[,]" there are question marks. At trial, Doyle denied that this was his handwriting, explaining that he does not "write a question mark like that. I think I left that blank and I think they filled it in for me." The following question on the form asked: "If yes, date of injury?" Doyle acknowledged writing "NA [not applicable]" in the blank.

According to a record for the same date, the date of injury is listed as Thursday night. Furthermore, under the section entitled: "Description of Incident/Illness[,]" it states that "pt. [patient] reports working regular activities & started having l[eft] … neck pain & l[eft] shoulder pain on 7/22/04. [C]ont[inued] working on 7/23/04 & pain increased in l[eft] shoulder. . . . [O]n 7/24/04 l[eft] shoulder pain." The examining physician opined that Doyle was unable to work. According to Doyle, Dr. Bonnie Drumwright, "referred [him] to Dr. [Michael] Hinton at the Orthopedic Center."

According to Dr. Hinton's records, he saw Doyle on July 28, 2004. His records indicate that Doyle told him that "while at work, he was doing quite a bit of lifting.… He woke up the following morning with his shoulder 'locked into position.'" Doyle also informed Dr. Hinton that "he had some neck pain at work." Dr. Hinton's

8

impression was "Scapular winging" and "Serratus anterior long thoracic nerve palsy." He then referred Doyle to Dr. Reynard Odenheimer for a neurological assessment.

Doyle first saw Dr. Odenheimer on August 11, 2004. In his report, Dr. Odenheimer notes that "[h]e reports that two-to-three weeks ago, while at work, he experienced left neck and ear sensory disturbance. Numbness progressed and subsequently noted weakness of his arm and difficulty lifting his left arm. His complaints have continued to progress more over the first couple of days but have persisted." Dr. Odenheimer ordered an MRI of the cervical spine and brain, an EMG nerve conduction study of the left arm, and an EEG. He informed Doyle that the MRI revealed a disc herniation and that the EMG results revealed "left C5 radiculopathy, mild bilateral carpal tunnel syndrome, and bilateral ulnar neuropathies[.]" Dr. Odenheimer referred Doyle to Dr. R. Dale Bernauer.

Doyle had an appointment with Dr. Bernauer on August 25, 2004. When filling out the patient registration form, Doyle explained that after work, he felt a strain and numbness in his neck. He stated that in the following days, he experienced increased pain and discomfort in his neck and shoulder. The record shows that Dr. Bernauer authorized an MRI of Doyle's left shoulder, which showed "[m]ild degenerative changes of the distal supraspinatus/infraspinatus tendon without evidence of acute tear[.]" By January 16, 2005, Dr. Bernauer opined that he "needs an Anterior Cervical Diskectomy and Fusion, C4-5. Still complaining of neck pain, left arm pain. He will be out of work for approximately 6 months to a year after

9

surgery."[4] According to Dr. Bernauer, Doyle was not able to return to work as of July 23, 2004, and he found Doyle to be totally temporarily disabled.[5]

Given the evidence, we find no manifest error in the workers' compensation judge's determination that Doyle proved by a preponderance of the evidence that his injury was work-related.

In *Thomason v. Wal-Mart Stores, Inc.*, 37,520, p. 2 (La.App. 2 Cir. 9/4/03), 852 So.2d 1283, 1285, *writ denied*, 03-2774 (La. 12/19/03), 861 So.2d 573, the plaintiff, Thomason, who worked as an unloader at Wal-Mart, testified that he "noticed a 'little' pain [in his stomach] after getting off work on Tuesday, but dismissed it as normal pain." The pain increased over the next couple of days, and Thomason's left testicle became swollen, which impaired his ability to walk. Wal-Mart denied Thomason's workers' compensation claim, alleging that he "was unable to point to a specific moment at work on Tuesday when he sustained his injury. . . . and he did not know how he had been injured." *Id*. at 1286. Furthermore, it contended that "Thomason did not mention anything specific happening during the last days he worked prior to his injury." *Id*.

The second circuit found that "[a]lthough Thomason was unable to pinpoint the precise moment of injury, this does not disqualify him from receiving benefits. . . . Thomason noticed pain after getting home from work, and this pain increased over the next two days. Thomason should also not be penalized because he described his pain as minor before Thursday night." *Id*. at 1287. The second circuit noted that this

---

[4] As of June 7, 2006, the date of trial, Doyle did not have the recommended surgery.

[5] Doyle testified that he has not worked since he was injured on July 23, 2004.

was the first time that he had any problems related to his groin area and that his medical records supported his belief that his injury was work-related.

Here, Doyle stated that he thought he had a muscle strain in his neck, and he did not consider it an injury that resulted from an accident. He explained:

> [W]hen I stated I didn't have a specific accident, whether I was talking to Pam or to a doctor or -- I didn't understand the terminology and, in my mind, an accident is if I -- you trip over a ladder or if you slip in water, okay? I didn't -- an accident occur. I do, however, view that something happened in that time frame that I was working at the Wal-Mart in Jennings because when I walked into the Wal-Mart in Jennings to do my job, I didn't have this pain, but when I left I had the pain.

He testified that when the pain worsened and he could not lift his arm, he knew something was wrong. Furthermore, as in *Thomason*, Doyle did not have any prior injuries to his neck and/or left shoulder, and his medical records document his belief that his injury was work-related.

Although Doyle did not immediately report the accident as required by Pepsi's policy, the evidence, when viewed as a whole, supports his claim that he was injured while working. *Fontenot v. Schlumberger Well Serv.*, 503 So.2d 1109 (La.App. 3 Cir. 1987). We find that the workers' compensation judge was free to reject Lafosse's testimony that Doyle stated that he may have injured himself by sleeping wrong, doing yoga, or from lifting his twins. *Safeco Ins. Co. of Am. v. Chrysler Corp.*, 01-1641 (La.App. 3 Cir. 7/31/02), 834 So.2d 1026. We note that Doyle testified that Lafosse "brought that up; and I had said, no, that didn't sound right. She had [] that opinion."

For the above reasons, we find that the workers' compensation judge's determination that Doyle's injury was work-related was not manifestly erroneous.

Accordingly, this assignment is without merit.

11

*Penalties and Attorney's Fees*

Pepsi argues that the workers' compensation judge erred in awarding penalties and attorney's fees. It contends that prior to denying Doyle's claim on July 30, 2004, Renwick, the adjuster, received evidence which demonstrated that Doyle's injury was not work-related. Specifically, Pepsi referenced the employer report, the accident investigation report, and Doyle's statements to Smith, Lafosse, and Renwick.

In *Lebert v. McNeese State University*, 05-856, p. 11 (La.App. 3 Cir. 2/1/06), 932 So.2d 678, 686, this court stated that "[u]nder La.R.S. 23:1201(F),[6] a claimant in a workers' compensation case has the burden of proving his entitlement to statutory penalties for the employer's refusal or failure to timely pay workers' compensation benefits." In *Mitchell v. Alliance Compressors*, 05-1186, p. 8 (La.App. 3 Cir. 4/5/06), 926 So.2d 127, 133, this court recently explained:

> The employer has a continuing duty to investigate, assemble, and assess factual information before it denies benefits. [*Thomas v. Alliance Compressors*, 04-1034 (La.App. 3 Cir. 12/8/04), 889 So.2d 424)] (citing *George v. Guillory*, 00-591(La.App. 3 Cir. 11/2/00), 776 So.2d 1200). It is this court's duty to "ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed." *Doumite* [*v. KVHP-Fox*

---

[6] Louisiana Revised Statutes 23:1201(F) provides:

Failure to provide payment in accordance with this Section or failure to consent to the employee's request to select a treating physician or change physicians when such consent is required by R.S. 23:1121 shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars. An award of penalties and attorney fees at any hearing on the merits shall be res judicata as to any and all claims for which penalties may be imposed under this Section which precedes the date of the hearing.

*29*, 04-427, p. 11 (La.App. 3 Cir. 10/20/04)], 884 So.2d [1283] at 1291 (quoting *Brown v. Texas-LA Cartage, Inc.*, 98-1063, p. 9 (La.12/1/98), 721 So.2d 885, 890).

Whether or not the employer is cast with penalties and attorney's fees is a question of fact that will not be overturned absent manifest error. *Id.*

In assessing Pepsi with penalties and attorney's fees, the workers' compensation judge remarked:

> The court finds that the adjuster's denial of the claim prior to conducting an investigation is arbitrary and capricious and without probable cause. The employer has a continuing duty to investigate, assemble and assess factual information before he denies benefits. For this reason, penalties and attorney's fees are appropriate in this matter. Penalties are owed in the amount of $2,000 and attorney's fees in the amount of $6,500 for prosecution of the claim.

After reviewing the record, we find that it supports a determination that Pepsi did not reasonably controvert Doyle's claim. As mentioned above, Doyle testified that Lafosse questioned whether his injury may have resulted from sleeping wrong, lifting his twins, or doing yoga. He maintained that although he denied such, Lafosse still listed these activities as the possible causes of his injury. Further, Doyle stated that there was a mistake on the employer report in that there is nothing written in response to the question: "What work actually was the employee doing when the injury occurred?"

Moreover, we find that Doyle's conversation with Smith did not cast serious doubt on Doyle's testimony. Doyle testified that while working Friday night, the muscles in his neck and shoulder began to tighten; however, when he woke up Saturday morning, he could not lift his arm. Smith asked him what happened and Doyle stated that he did not know, "that he could have slept on it wrong." We find that the workers' compensation judge, as the trier-of-fact, could have determined that

13

Doyle was simply offering an explanation as to why he could not lift his arm.

With regard to the statement given to Renwick on Tuesday, July 27, 2007, we find that it does not sufficiently call into question the occurrence of a work-related accident. In that statement, Doyle simply admitted that he did not tell the staff at Urgent Care that he had injured himself at work and that the date of his injury was debatable because he did not remember a specific accident happening. For reasons discussed above, we find that Doyle offered plausible explanations for these statements.

Furthermore, we note that although Doyle did not tell the staff at Urgent Care that his injury was work-related, when he presented at St. Patrick's later that day, he did, in fact, mention that he was lifting coke boxes on Thursday night and that he now had left shoulder pain. Additionally, the day before he spoke with Renwick, Doyle went to Business Health Partners where he stated that he felt the onset of neck and shoulder pain while working.

Based on this evidence, we find that the trial court could have concluded that Pepsi did not reasonably controvert Doyle's claim insofar as Doyle's medical records indicated that the onset of pain occurred while and/or after he performed his work duties. Because the trial court found that Pepsi did not thoroughly investigate the claim before denying it, and the record supports this view, the workers' compensation judge's imposition of penalties and attorney's fees was not manifestly erroneous.

Accordingly, this assignment has no merit.

**DECREE**

For the foregoing reasons, the ruling of the workers' compensation judge is affirmed. All costs of these proceedings are assessed against the defendant, Pepsi Bottling Group.

**AFFIRMED.**